## STEWART v. GRIFFITH, EXECUTOR OF BALL, DECEASED.

### APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 145.   Argued April 8, 11, 1910.—Decided April 25, 1910.

Where, as in this case, a condition of forfeiture in a contract of sale of real estate declaring it to be null and void in case of failure on the part of the vendee to perform is plainly for the benefit of the vendor, the word void means voidable with election to the vendor to waive or to insist upon the condition.

A contract of purchase and sale of real estate, the tenor of which imports mutual undertakings, held in this case to be an absolute contract and not merely an option to purchase.

In this case a letter from an executor to a purchaser under an uncompleted contract of sale held not to be a waiver of right to compel specific performance.

The party executing a sealed contract for purchase of real estate as principal cannot avoid specific performance on the ground that he executed as agent for another not mentioned in the instrument.

Under the provisions of § 329, Code of the District of Columbia, an executor who can maintain an action for specific performance in the jurisdiction in which the land lies can maintain it in the District if the defendant there resides.

Under the law of Maryland an executor may maintain an action for specific performance of a contract made by his testator, to convey real estate, and the title conveyed by him is good and valid if he satisfies the Orphans' Court that the entire purchase price is paid, and such condition is a condition subsequent.

A provision giving executors full and complete power over the entire estate, real, personal and mixed, held in this case to imply a devise to the executor of real estate under contract of sale and authority

·· to convey in order to carry out the contract on receiving the balance due.

As against heirs, real estate under contract of sale made by testator may be treated as personalty and conveyed by the executor safe from any collateral attack upon the will.

31 App. D. C. 29, affirmed.

THE facts are stated in the opinion.

*Mr. James E. Padgett* and *Mr. Henry E. Davis* for the appellant:

The appellee has no right to bring or maintain this suit, and the alleged action of the Orphans' Court was without jurisdiction and void; the court had no jurisdiction to pass the order of December 15, 1903, and it is a nullity.

When a court exercises an extraordinary power under a special statute prescribing its course, that course ought to be exactly observed, and jurisdictional facts must appear in order to show that its proceedings are *coram judice. Thatcher* v. *Powell, Lessee,* 6 Wheat. 119; *Thompson* v. *Whitman,* 18 Wall. 457; *United States* v. *Walker,* 109 U. S. 258; *Windsor* v. *McVeigh,* 93 U. S. 274. Orphans' courts have power to take probate of wills but not to adjudicate questions of title dependent upon their operation or effect, or to decide upon the rights of disposition. *Schull* v. *Murray,* 32 Maryland, 9; *Ramsay* v. *Welby,* 63 Maryland, 584; *Grant Coal Company* v. *Clary,* 59 Maryland, 445; *Baltimore* v. *Hood,* 62 Maryland, 378.

The record does not show any existing contract which can be enforced by specific performance against the appellant, or any contract binding the appellant existing after November 7, 1903. The contract does not provide that either the appellee or appellant shall have the option to consider the contract continuing, and enforce the same after the happening of the contingency, which the contract itself says shall terminate its own existence.

This contract being a Maryland contract, affecting lands in that State, must, of course, be construed and its meaning

determined in accordance with the decisions of the courts and the laws of that State.

The primary technical, as well as ordinary, meaning of the words is, without legal effect or force, incapable to bind parties or support a right. 29 Amer. & Eng. Ency. Law (2d ed.), 525. But the contract itself shows that the parties did not intend the result of the happening of the contingency to make the contract merely voidable, because they use not only the term "null and void" but added to it the term "and of no effect in law." See *Pullman Palace Car Co.* v. *Central Trans. Co.*, 139 U. S. 24; *Cherry* v. *Stein*, 11 Maryland, 1, as to the terms of avoidance of a contract for the sale of real estate came before the court for determination. The contract begins by saying, "I have this day purchased from C. R. Tate, Administrator," and concludes with "this sale to be null and void in case the whole square, as advertised, shall be sold together, otherwise to remain in full force." The court said: "Such an instrument constitutes a valid and effective sale, subject to become a nullity upon a single contingency." *Hazelton* v. *Le Duc*, 10 App. D. C. 379, does not support appellee's position, and see *Jones* v. *Holliday*, 2 App. D. C. 279. When the contingency happened the contract terminated and has since had no existence. But if there should be doubt, the conduct and conversations of the parties and their agents maintain this contention. *Varnum* v. *Thurston*, 17 Maryland, 471; *Roberts* v. *Bonaparte*, 73 Maryland, 191; *United States* v. *Bethlehem Steel Co.*, 205 U. S. 118.

The acts and declarations of agents of the parties in the course of their employment are admissible. *Main* v. *Aukam*, 12 App. D. C. 375. So that it is quite certain that all the parties understood that if the first payment was not made on November 7, the contract would become void and ended.

To avoid the effect of this ending of the alleged optional right the appellee contends that as he had not then received his letters testamentary his action was without authority and not binding upon him under § 48, Art. 93, of the Maryland

Code, but a contract void by statute cannot be enforced directly or indirectly. It confers no right and creates no obligation as between the parties to it. The party who refuses stands upon the law and has a right to refuse. *Dunphy* v. *Ryon*, 116 U. S. 491; *May* v. *Rice*, 101 U. S. 231. The record shows that the heirs of Alfred W. Ball are indispensable parties to this suit. 3 Pom. Eq. Jur., § 129; *Lynn* v. *Zephart*, 27 Maryland, 547; *Kellar* v. *Harper*, 64 Maryland, 74.

Where the court appoints a trustee to sell real estate and the trustee sells the property no conversion takes place until the court ratifies the sale and the purchaser pays the purchase money. *Dalrymple* v. *Taneyhill*, 2 Md. Ch. 125; *Jones* v. *Plummer*, 20 Maryland, 416. So where the testator directs his real estate to be sold and the proceeds applied to a special purpose, no conversion takes place if the purpose fails. *Rizer* v. *Perry*, 58 Maryland, 112; 3 Pom. Eq. Jur. 138, 141.

Until the appellant had made his first payment under the contract, or, in the event of his default, until Ball had made his election, assuming that he had the right so to do, to enforce the contract there could be no equitable conversion. 3 Pom. Eq. Jur. 132; 30 Beav. 206; *White's Estate*, 167 Pa. St. 206; *Edward* v. *West*, 7 Ch. Div. 858; *Smithers* v. *Loehenstein*, 50 Ohio St. 346.

*Mr. Charles H. Merillat* and *Mr. George R. Gaither*, with whom *Mr. Charles J. Kappler* was on the brief, for appellee.

Mr. Justice Holmes delivered the opinion of the court.

This is a bill in equity, brought by the executor of one Ball for the specific performance of a contract made by the appellant to purchase certain land. The plaintiff had a decree in the Court of Appeals of the District of Columbia, and the defendant appealed. 31 App. D. C. 29.

The material parts of the contract are as follows: "This agreement, Made by and between L. A. Griffith, duly authorized Agent and Attorney under a certain power of At-

torney from Alfred W. Ball both of Prince George's County, Maryland, parties of the first part, and Wm. W. Stewart of Washington D. C. of the second part. Witnesseth that the said W. W. Stewart has paid to the said L. A. Griffith, Agent, the sum of Five Hundred Dollars ($500) part purchase price of the total sum to be paid for a certain tract of land, owned by the said Alfred W. Ball," in Maryland as described, "same being sold at the rate of $40 per acre." "And the said L. A. Griffith as the Agent and duly authorized Attorney of said Alfred W. Ball, hereby grants bargains and sells, and agrees to convey by proper deed . . . duly executed by the said Ball to the said Stewart, the said Two Hundred and forty acres of land upon further payments and conditions hereinafter named to wit: The balance of one-half of the purchase price of the said 240 acres, more or less, at the rate of Forty dollars per acre is to be paid to the party of the first part on the 7th day of November 1903, and the remaining one-half of the total purchase price, is to be divided into five equal payments secured by five promissory mortgage notes, secured by purchase money mortgage upon the said property to be given by the said Stewart and Wife," with immaterial details. A burial lot of one acre is reserved "conditioned however that if the said Ball should desire to abandon the said burial tract . . . . he shall have paid to him therefor by the said party of the second part the sum of ($40) Forty Dollars," &c. "The said land is to be surveyed and a plat made thereof, and the total purchase-price is to be at the rate of Forty Dollars per acre as determined by the said Survey the costs of the said Survey is to be borne equally by the said parties of the first part and the second parts; the said L. A. Griffith and W. W. Stewart each to pay one half of the total survey costs. Proper Deed or Deeds of Conveyance and abstracts of title of the said land based upon title search therefor is to be made and by J. K. Roberts . . . showing clear and unencumbered fee simple title, in the said land above mentioned and described, in the said Alfred W. Ball, and one half of the total costs for

same not exceeding $50, is to be borne equally by the parties hereto. In case the remainder of the first half of the purchase price be not paid on November 7, 1903 then the said $500 so paid to the said Griffith is to be forfeited and the Contract of sale and conveyance to be null and void, and of no effect in law, otherwise to be and remain in full force." . . . "The possessory right to all of the said premises on the property mentioned herein is to remain in the said Ball, until the one half payment of the total purchase price herein provided for on November 7th, 1903, has been fully paid and satisfied, to the said L. A. Griffith Agent. Witness our hands and seals this 5th day of June 1903. L. A. Griffith. Wm. W. Stewart." With seals.

The first defense is based on this document itself. It is said that the defendant made no covenant and therefore was free to withdraw if he chose to sacrifice the five hundred dollars that he had paid. This contention should be disposed of before we proceed to the other questions in the case. The argument is that the condition of forfeiture just stated and the consequence that the contract is to be void and of no effect in law disclose the only consequences of default on the purchaser's part, much as until well after Lord Coke's time the only consequence of breaking the condition of a bond was an obligation to pay the penalty. The obligor was held to have an election between performing the condition and payment. *Bromage* v. *Genning*, 1 Roll. R. 368; 1 Inst. 206b; *Hulbert* v. *Hart*, 1 Vern. 133 (1682). Some circumstances were referred to in aid of this conclusion, but as we think the meaning of the document plain we shall not mention them, except in connection with other matters, further than to say that there is nothing that would change or affect our view.

It seems to have been held within half a century after *Hulbert* v. *Hart*, that, under some circumstances at least, a bond would be construed to import a promise of the event constituting the condition. *Hobson* v. *Trevor*, 1 Strange, 533, *S. C.*, 2 P. Wms. 191 (1723). *Anonymous*, Moseley, 37 (1728);

*Roper* v. *Bartholomew*, 12 Price, 797, 811, 822, 826, 832.  *Hooker* v. *Pynchon*, 8 Gray, 550, 552.  But in this case we are not confined to a mere implication of a promise from the penalty. The tenor of the 'agreement' throughout imports mutual undertakings.  The $500 is paid as 'part purchase price of the total sum to be paid,' that is, that the purchaser agrees to pay. The land is described as 'being sold.'  There are words of present conveyance inoperative as such but implying a concluded bargain, like the word 'sold' just quoted.  So one-half of the purchase price 'is to be' divided and the notes secured by mortgage 'to be given;' and in the case of the burial lot Ball 'shall have paid to him' $40 if he elects to abandon it. Here is an absolute promise in terms, which it would be unreasonable to make except on the footing of a similar promise as to the main parcel that the purchaser desired to get.  We are satisfied that Stewart bound himself to take the land.  See *Wilcoxson* v. *Stitt*, 65 California, 596.  *Dana* v. *St. Paul Investment Co.*, 42 Minnesota, 194.  The condition plainly is for the benefit of the vendor and hardly less plainly for his benefit alone, except so far as it may have fixed a time when Stewart might have called for performance if he had chosen to do so, which he did not.  This being so, the word void means voidable at the vendor's election and the condition may be insisted upon or waived at his choice.  *Insurance Co.* v. *Norton*, 96 U. S. 234. *Oakes* v. *Manufacturers' Insurance Co.*, 135 Massachusetts, 248, 249.  *Titus* v. *Glen Falls Ins. Co.*, 81 N. Y. 410, 419.

Ball died on November 5 or 6, 1903, just before the date fixed by the contract for the payments (November 7).  He left a will appointing Griffith his executor and containing provisions to which we shall refer later.  Before probate Griffith wrote to Stewart as follows on November 10:

"I have consulted two lawyers and am satisfied that I am fully authorized and empowered to complete sale of land and give deed.  It rests with you.  Please let me know positively on or before Monday next (16th) what you intend to do.  There is a proposition on hand from other sources and I have under

this will power to act. I will make private arrangements at once for the disposition of it, if you do not take it. If you do not meet the requirements and satisfactory arrangements are not made before Monday, 16th at 12 o'clock please consider the matter ended. I think you entitled to the property and I desire that you shall get it, but I must do for the best interests of the estate, and I will gladly wait for you until Monday, 16th." There is a suggestion in argument not quite unwarranted by the language of this letter, that so far as in Griffith's power he then left the choice to Stewart whether to go on with the bargain or not. But apart from Griffith's lack of authority to change rights at that time, we are satisfied that the true import of the letter was politely to apply a spur to Stewart on the assumption that he had a bargain that he would not want to let go. The land was supposed to contain oil.

The stipulations in the contract were performed on the part of the vendor, and it now may be assumed that Stewart's obligation is outstanding, although repudiated by him, and that the only question is whether it can be enforced by Griffith in this action. To be sure, there was some attempt on Stewart's part, earlier, to say that he merely represented an oil company, and that the company alone was bound; but this properly was abandoned at the argument—Stewart's name is the only one appearing in the instrument, and he signed and sealed it, so that no such escape is open. *Glenn* v. *Allison*, 58 Maryland 527; *M'Ardle* v. *Irish Iodine & Marine Salts Manf. Co.*, 15 Ir. C. L. 146, 153.

Coming, then, to the question that remains, it is to be noticed as a preliminary that if Ball's executor could have maintained this suit in Maryland, where the land lies, he can maintain it here, where the defendant resides. Code, D. C., § 329. Some technical objections were raised before us as to the proof of the probate proceedings, but it sufficiently appears that Ball's will was proved and that the plaintiff qualified as executor under the same.

By the Maryland code an executor may prosecute any personal action whatever, whether at law or in equity, that the testator might have prosecuted, except an action for slander. Code of 1888, Art. 93, § 104. And by § 81 of the same article the executor of a person who shall have made sale of real estate, and has died before receiving the purchase money or conveying the same, may convey said real estate to the purchaser, and his deed shall be good and valid in law, and shall convey all the right, title, claim and interest of such deceased person in such real estate as effectually as the deed of the party so dying would have conveyed the same; provided, the executor of the person so dying shall satisfy the Orphans' Court granting him administration that the purchaser has paid the full amount of the purchase money. These seem sufficient to make out the plaintiff's case, if there were nothing more. The proviso in the Maryland statute obviously must create a condition subsequent only, as it is not to be supposed that a purchaser would pay unless he got what he paid for at the same time. In substance, the code points out the executor as the proper person to enforce the contract, gives him a right of action to that end and empowers him to make the deed. We do not perceive how a conveyance could be questioned, if made by an executor upon a cotemporaneous payment of the price, in pursuance of a binding contract of his testator, even without obtaining antecedent authority from the Orphans' Court. Therefore we do not perceive why the executor is not entitled to require specific performance if he is ready to deliver a deed at the moment of receiving the price. In this case the executor obtained an order from the Orphans' Court, purporting to authorize him to complete the sale, as if it had been an application for leave to sell under § 276. This seems to us to have been superfluous, but it did no harm, and it does not narrow the plaintiff's right to recover, by being set out as one of the foundations of the bill.

Next, apart from statute, it would be going far in search of possible doubts to say that sufficient authority could not be

derived from the will. The language is, "I direct, authorize and empower" the executor "to have full and complete power and authority over my entire estate, real, personal and mixed," and it directs and empowers him to sell the testator's real estate at public sale, after one month's notice, upon such terms as he thinks proper. We are not inclined to disagree with the Court of Appeals in its opinion that the words taken with the whole will imply a devise of the legal title to his executor and an authority sufficient to warrant his carrying out the sale. It is urged that the probate of the will does not establish it conclusively as to real estate, and that the heirs might attack it hereafter, but it is answered that by the contract the land had become personalty as against them, and that therefore so far as this land is concerned the will is safe from collateral attack. Moreover, as it is clear that the estate has and is subject to a binding contract, it is hard to see how it matters to the heirs who does the formal acts of accomplishment so long as he is accountable to the Orphans' Court.

No question was raised on either side as to the covenants of Stewart being enforceable only by Griffith personally, because the agreement was under seal, and Griffith alone was party to it. *Berkeley* v. *Hardy*, 5 B. & C. 355; *Frontin* v. *Small*, 2 Ld. Raym. 1418, 1419. It is enough to say that Stewart could not have profited by the suggestion had it been made.

*Decree affirmed.*

MR. JUSTICE HARLAN concurs in the result.