**FIRST NAT. BANK OF WAGENER, S. C., v. GLENS FALLS INS. CO., OF GLENS FALLS, N. Y., et al.**

Circuit Court of Appeals, Fourth Circuit.

June 12, 1928.

No. 2709.

1. **Vendor and purchaser** $\Longleftrightarrow$ **54—Purchaser in possession after making payments treated as owner, and vendor as holding title as security under binding contract.**

Equity treats purchaser, who has made payments and taken possession under binding contract, as real owner, subject to liability for price, and vendor as holding title as security, under maxim that equity regards as done that which ought to be done.

2. **Insurance** $\Longleftrightarrow$ **282(8)—Where purchaser makes payments and takes possession, vendor is not unconditional and sole owner.**

Under binding contract of sale, when purchaser has made payments and taken possession, vendor is not unconditional and sole owner, within warranty in fire policies.

3. **Insurance** $\Longleftrightarrow$ **282(8)—Contract of sale, under which purchasers had defaulted and one had agreed to pay rent, held not breach of vendor's warranty as to ownership.**

Under contract of sale, providing that default should render obligation void and give seller right to collect principal and interest, or to treat obligation as ended and collect rent, where purchasers defaulted and one of them had promised to pay rent, contract was not breach of vendor's warranty of sole and unconditional ownership in fire policy.

4. **Vendor and purchaser** $\Longleftrightarrow$ **78—Time is of the essence, when parties make it so.**

While time is not ordinarily of the essence of a contract for sale of real estate, it is of the essence, when the parties make it so.

5. **Vendor and purchaser** $\Longleftrightarrow$ **78—When time is of the essence, vendee forfeits rights by failure to comply within specified time.**

Where time is made of the essence, parties to contract of sale are bound by the time limited, and vendee forfeits his rights by failure to comply within specified time.

6. **Vendor and purchaser** $\Longleftrightarrow$ **78—Time held of the essence, under contract making contract void and requiring payment of rent at vendor's election on default.**

Contract for resale of land acquired by vendor by foreclosure, providing that default

should avoid contract and give seller right to collect principal sum and interest, or treat obligation as ended and collect rent, made time of the essence.

7. **Vendor and purchaser** $\Longleftrightarrow$ **79—Provision giving vendor right to hold purchasers liable held not inconsistent with right to insist on forfeiture.**

Under contract providing that default should render obligation void, and give vendor right to collect principal sum and interest, or treat obligation as ended and collect rent, right to hold purchasers liable was not inconsistent with right to elect to insist on forfeiture.

8. **Estoppel** $\Longleftrightarrow$ **78(3)—Copurchasers stating they would not purchase, but agreeing to pay rent provided in contract, held estopped to claim right to purchase.**

Where one of purchasers, under contract providing that default should avoid contract and entitle vendor to collect rent, after consulting with another after default, stated they were unable to purchase and would pay rent, and assumed the relation of tenant, he and the copurchaser so consulted were estopped to claim right to purchase.

9. **Estoppel** $\Longleftrightarrow$ **98(3)—Heirs, who accepted payments from estate and permitted administrator and copurchaser to pay rent, were estopped to claim under contract.**

Heirs of one purchaser of real estate, who accepted dividends from estate which they knew could not be paid, if obligation to purchase still existed, and permitted administrator, who was copurchaser, to pay rent after default, were estopped to claim under contract.

10. **Insurance** $\Longleftrightarrow$ **668(15)—Credibility of evidence that agreement permitting additional insurance had been indorsed on lost policies was for jury.**

Where testimony, if true, showed additional insurance was authorized by agreement indorsed on lost policies, its credibility was for jury.

11. **Insurance** $\Longleftrightarrow$ **550—Insured held not estopped by proofs of loss showing breach of warranty of ownership, where facts explained to adjuster.**

Proofs of loss, stating third persons had contract to purchase property, did not estop insured to deny breach of warranty of ownership, where facts as to contract, which had been forfeited, had been explained to adjuster, and were soon afterwards explained to agents.

12. **Insurance** $\Longleftrightarrow$ **550—Insured held not estopped by proofs of loss showing excess insurance, when agents knew of change in policies, necessitating different maximum.**

Proofs of loss, apparently showing insurance in excess of amounts permitted by policies, did not estop insured to deny breach of warranty, where company's agents had directed transfer from one building to another, which required local agent to make changes as to amount of insurance permitted.

13. **Insurance** $\Longleftrightarrow$ **550—False statements in proofs of loss estop insured only when insurer acts to its injury.**

False statements in proofs of loss estop insured, where insurer relies thereon and so acts

or refrains from acting that injury would result therefrom, if statements were denied, but not otherwise.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Aiken; Ernest F. Cochran, Judge.

Action by the First National Bank of Wagener, S. C., against the Glens Falls Insurance Company, of Glen Falls, N. Y., and another. From a judgment on a directed verdict for defendants, plaintiff brings error. Reversed and remanded.

John F. Williams, of Aiken, S. C. (Williams, Croft & Busbee, of Aiken, S. C., on the brief), for plaintiff in error.

P. F. Henderson, of Aiken, S. C., and Irvine F. Belser, of Columbia, S. C. (Melton & Belser, of Columbia, S. C., and Hendersons & Salley, of Aiken, S. C., on the brief), for defendants in error.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

PARKER, Circuit Judge. This is a writ of error to review a judgment rendered in two actions, which were consolidated in the court below. The actions were instituted by the First National Bank of Wagener, S. C., as plaintiff, against the Glens Falls Insurance Company and the National Fire Insurance Company as defendants, to recover on a number of fire insurance policies, aggregating $17,500 and covering three store buildings in the town of Wagener. Defendants admitted the execution of the policies, but alleged that certain of them were void for violation of the warranty as to additional insurance, and that all were void for violation of the warranty as to unconditional and sole ownership. Upon the trial defendants contended also that, whether these warranties were actually breached or not, plaintiff had incorporated in the proofs of loss statements showing such breach, and was thereby estopped to assert the contrary upon the trial of the action. A verdict was directed for defendants, and the correctness of this ruling is the only point presented by the assignments of error.

The question presented is whether, considering the evidence, with all proper inferences to be drawn therefrom, in the light most favorable to plaintiff, the court was justified in directing a verdict for defendant, considering (1) the alleged breach of warranty as to unconditional and sole ownership; or (2) the alleged breach of warranty as to additional insurance; or (3) the estoppel claimed to

27 F.(2d)—5

arise from the statements contained in the proofs of loss. The question, therefore, resolves itself into three questions, which we shall consider separately.

1. *Unconditional and Sole Ownership.*— All of the policies contained the standard provision as to unconditional and sole ownership, viz.: "This entire policy shall be void unless otherwise provided by agreement in writing added hereto (a) if the interest of the insured be other than unconditional and sole ownership." The legal title to the property was admittedly in plaintiff, and the question with respect to this warranty is whether, under a contract entered into between plaintiff and J. C., C. R., and Donia A. Lybrand on October 1, 1923, these persons had such an interest in the property as to constitute a breach thereof. Defendants contend that they did have. Plaintiff denies that they acquired such interest under the contract, and contends, also, that whatever interest they may have had was surrendered in December, 1924, several months before the issuance of policies sued on. The facts bearing on these contentions, viewing the evidence in the light most favorable to plaintiff, are as follows:

The three buildings insured were formerly the property of one J. W. Lybrand. He deeded them to his son, J. C. Lybrand, taking in payment a note and mortgage for a large amount which he discounted with plaintiff. Plaintiff held other paper of J. W. Lybrand, secured by pledge of chattel mortgages and other collateral of doubtful value. Both J. W. and J. C. Lybrand later went into bankruptcy, and the mortgage on the three stores was foreclosed, and at the foreclosure sale they were bought in by plaintiff. On October 1, 1923, plaintiff held debts against J. C. and J. W. Lybrand, including the debt for which the stores had been mortgaged, amounting to $30,661. It had title to the stores under the foreclosure sale, and held as security for the debts owing to it chattel mortgages and other collateral amounting to around $16,000. All of the debts were past due, and the bank examiner was demanding that something be done with regard to them.

To meet this situation, plaintiff agreed with J. C. Lybrand, his brother, C. R. Lybrand, and his mother, Donia A. Lybrand, widow of J. W. Lybrand, that, if they would pay $10,661 on the debts, plaintiff would turn over to them the chattel security which it held and would give them a contract under which they could purchase the three store buildings for $20,000. This payment was

made, and plaintiff transferred to J. C., C. R., and Donia A. Lybrand the chattel security. It thereupon charged off the remaining $20,000 to real estate and executed the contract in controversy. This contract was dated October 1, 1923. It was signed by plaintiff, called the seller, and by the three Lybrands, called agents, and contained, among others, the following provisions, which are the ones pertinent here, viz.:

"Seller agrees to sell to agents the property hereinafter described for the sum of twenty thousand ($20,000) dollars, which sum is to be paid in four equal annual installments, successively, beginning November 1, 1924, the purchase price of twenty thousand ($20,000) dollars to draw interest from October 1, 1923, at the rate of 8 per cent. per annum, payable annually, and any interest not paid when due to draw interest at the same rate annually. Default in payment to render this obligation void, and to give to seller the right to collect the said sum of principal and interest at its option, or to treat this obligation on default on the part of agents at an end, and to be under no liability whatever to carry out the terms of this agreement, and to collect for the use of the premises for the year beginning to-day the sum of twelve hundred ($1,200) dollars as a rental; but should agents designate their principal to whom the title should be made within the next year, or at any time during the term of this contract, and comply with the terms thereof, seller agrees to make the title to such principal on the same terms set forth herein, upon said principal giving his or their purchase money mortgage for the amount set forth herein.

"It is further understood and agreed between the parties that the agents will reimburse seller for all taxes and insurance premiums expended on the property, which is the subject of this agreement, and the same shall be reimbursed upon rendition of a statement of the amount thereof.

"It is further agreed that the annual sum as rental as set forth hereinabove shall be payable at the end of the year, unless the premises shall be vacated in the meantime, in which case a pro rata of the said sum shall become due and collectible, but in case of compliance with this agreement on the part of agents, no sum shall be charged whatever as rental—only the principal, interest, taxes, and insurance, or any other items of expense necessary to the maintenance of the property."

In these negotiations J. C. Lybrand represented his mother, Mrs. Donia A. Lybrand.

The J. C. & C. R. Lybrand Corporation, the stock in which seems to have been owned by J. C., C. R. and Donia A. Lybrand, was carrying on business in the buildings at the time of the execution of the contract, and remained in possession under the contract after same was executed. Nothing was paid within the time provided, and at the request of the Lybrands they were allowed another month within which to make payment. They were unable, however, to do anything within that month, which expired December 1, 1924, and a few days later C. R. Lybrand died, and his widow and J. C. Lybrand administered upon his estate. Upon plaintiff making inquiry as to what the Lybrands proposed to do under the contract, J. C. Lybrand, after conferring with his mother, stated that they would be unable to purchase and that they would pay rent in accordance with its provisions. Plaintiff accordingly allowed the J. C. & C. R. Lybrand Corporation to remain in possession of the property under an agreement to vacate within 30 days if a purchaser could be found, and it continued to pay rental at the rate of $1,200 a year.

In surrendering any rights to purchase the property under the contract, J. C. Lybrand was representing his mother, Donia A. Lybrand, as well as himself. He was also one of the administrators of the estate of C. R. Lybrand, and it appears that this estate owned $8,333.33 of the stock in the J. C. & C. R. Lybrand Corporation. C. R. Lybrand left surviving him seven brothers and sisters, as well as his widow; but there is no showing that any of these ever claimed any interest in the property covered by the contract, or were willing that any payment be made out of his estate under the contract, or that same be recognized as a liability of the estate. On the contrary, the report filed by J. C. Lybrand as administrator on January 18, 1926, shows that they had received from him their shares of the estate, which could not have been paid to them if liability for the purchase price of the stores under the contract had been recognized as a liability.

Two of the policies upon which action was brought were issued to plaintiff July 20, 1925, and three September 15, 1925, several months after the default under the contract had occurred, and after plaintiff had been notified that the Lybrands would not attempt to purchase, but would pay rent and would vacate on notice. The question is whether, at that time, they had under the contract such an interest in the buildings as would ren-

der the policies void for violation of the warranty as to unconditional and sole ownership. We think not.

[1, 2] It is well settled, of course, not only in South Carolina, but elsewhere, that in the case of a binding contract for the sale and purchase of real estate, where the purchaser has made payments and entered into possession, equity will treat him as the real owner of the property, subject to liability for the unpaid purchase price, and the vendor or seller as holding the legal title merely as security, applying the maxim that equity regards as done that which ought to be done. Pomeroy's Equity Jurisprudence, vol. 1, § 368; Virginia Shipbuilding Corporation v. United States (C. C. A. 4th) 22 F.(2d) 38, 50; Rexford v. Southern Woodland Co. (C. C. A. 4th) 225 F. 1022; Id. (D. C.) 208 F. 295; Lewis v. Hawkins, 23 Wall. 119, 23 L. Ed. 113; Epps v. McCallum Realty Co., 139 S. C. 481, 138 S. E. 297. And in such case the vendor is not the unconditional and sole owner of the property, within the meaning of the clause of the insurance policies here under consideration. Vancouver Nat. Bk. v. Law Union & Crown Ins. Co. (C. C.) 153 F. 440; Phenix Ins. Co. v. Kerr (C. C. A. 8th) 129 F. 723, 66 L. R. A. 569; Sharman v. Continental Ins. Co., 167 Cal. 117, 138 P. 708, 52 L. R. A. (N. S.) 670; Ins. Co. v. Erickson, 50 Fla. 419, 39 So. 495, 2 L. R. A. (N. S.) 512, 111 Am. St. Rep. 121, 7 Ann. Cas. 495, and note at 498; 14 R. C. L. 1058.

[3] But the case as made by the plaintiff's evidence is not the case of insurance procured by the vendor where the vendee is in possession under a contract of sale. If plaintiff's evidence is believed, any right of the Lybrands to purchase under the contract had been forfeited before the policies were issued, and at that time the relationship existing was not that of vendor and purchaser but of landlord and tenant. Stinson v. Dousman, 20 How. 461, 15 L. Ed. 966; Murphy v. Myar, 95 Ark. 32, 128 S. W. 359, Ann. Cas. 1912A, 573. The rights of the parties, of course, are to be determined by the contract, and its meaning is very clear. Plaintiff agreed to sell the property in question to the Lybrands at the price of $20,000, to be paid in four equal annual installments, the first on November 1, 1924, the purchase price to bear interest at 8 per cent. Default in payment of the amount provided was to avoid the obligation on the part of plaintiff to sell, but in case of such default it was to have the option either to collect the purchase price and interest or to treat its obli-

gation to sell as at an end. In the latter event the Lybrands were to pay $1,200 per year as rental for the property.

[4, 5] And there is no doubt, we think, that under the contract the legal effect of the failure of the Lybrands to make the first payment of the purchase money when due, or within the extension granted, was to forfeit their right to purchase. It is true that time is not ordinarily of the essence of a contract of this sort, but it is of the essence when the parties make it so. And it is ordinarily held to be made of the essence by a provision that, in the event of the failure of the purchaser to comply with the terms of his agreement, the vendor shall be released of all obligation to convey, or that on default in making the required payment the contract shall be null and void. 27 R. C. L. 448; Cleary v. Folger, 84 Cal. 316, 24 P. 280, 18 Am. St. Rep. 187; note 104 Am. St. Rep. at page 271 and cases cited. And, where time is made of the essence, the parties are bound by the time limited in the contract, and the vendee forfeits his rights by failure to comply within the specified time. Williams v. McManus, 90 S. C. 490, 73 S. E. 1038, 1048. In Cooper v. Rutland, 99 S. C. 83, 82 S. E. 994, cited by defendants, the contract did not, as in the case at bar, provide for forfeiture.

[6, 7] We think it is clear that the parties to this contract intended that time should be of the essence. Plaintiff had already been obliged to foreclose on the property. It was willing to allow the Lybrands to buy it back, if they could do so within a reasonable time; but it is not reasonable to think that it would have been willing to turn the property back to them in such a way as probably to require another foreclosure. It allowed them to continue in possession, giving them a contract under which they were to have the right to purchase, if they made the payments agreed upon within the time specified, but upon the express condition that, if they failed to do this, they were to pay rent for the use of the property and the bank was to be under no obligation to convey.

The right on the part of the plaintiff at its election to hold the Lybrands liable for the purchase price was not inconsistent with the right to insist upon a forfeiture if it did not so elect. On the contrary, a mere option to declare the rights of the purchaser forfeited is upheld as in the interest of the vendor, and not inconsistent with his right to enforce the contract if he desires to do so. Stewart v. Griffith, 217 U. S. 323, 30 S. Ct. 528, 54 L. Ed. 782, 19 Ann. Cas. 639.

And a fortiori there is no inconsistency between an option on the part of the vendor to enforce the contract and the right to insist upon a forfeiture incurred thereunder. The option on the part of plaintiff, which it has not exercised, was merely to enforce liability under the contract of purchase notwithstanding default, if it saw fit to do so. It did not see fit to do so, but the testimony is that after default the Lybrands gave notice that they could not purchase, and agreed to pay rent, and that plaintiff has been collecting rent ever since. If this is believed, there can be no question that the interest of the Lybrands under their contract of purchase was at an end, and that the interest of the plaintiff in the property was that of unconditional and sole ownership.

It is argued, however, that as C. R. Lybrand had an interest under the contract, and that as he died before notice was given that the Lybrands would not purchase, the rights of his heirs could not have been affected by that notice. As J. C. Lybrand, who gave the notice, was one of the executors of C. R. Lybrand's estate, however, and as exercising the right to purchase would have required that the estate put up more than its total assets, this position seems to us to be rather strained. A sufficient answer is that the forfeiture under the contract depended, not upon the action of J. C. Lybrand, but upon the terms of the contract itself, and that the right of the Lybrands to purchase had been lost by default prior to the death of C. R. Lybrand.

[8, 9] In addition to the forfeiture by failure to make payment, we think that the action of J. C. Lybrand in notifying the bank that he would not purchase, but would pay rent, and in assuming the relation of tenant under the contract, certainly estopped him from claiming a right to purchase. It also estopped his mother, if, as testified, the notice was given pursuant to consultation with her. And although, nothing else appearing, it might not estop the heirs of C. R. Lybrand, they are estopped by reason of the fact that they accepted dividends from C. R. Lybrand's estate, which they must have known could not possibly have been paid them, if the obligation to purchase under the contract had been considered as a liability of his estate. Not only did they accept these dividends, but they stood silently by and did nothing while C. R. Lybrand's administrator notified plaintiff that the Lybrands would not purchase, and while he was paying rent on the property to plaintiff for a corporation in which the estate of C. R. Lybrand owned a large interest. It is not reasonable to infer that they were not familiar with what was being done, and by their silence under the circumstances they were precluded from claiming any right to purchase under the contract. Cory Mann George Corporation v. Old (C. C. A. 4th) 23 F.(2d) 803, 809. In fairness to them, however, it should be stated that the record does not show that they are attempting to take any such inconsistent position as would be involved in a claim of the right to purchase.

As stated above, the reason of the rule upon which defendants rely as to treating the purchaser as the real owner of the property is that equity considers that as done which ought to be done. The basis of the holding that he is the owner within the meaning of an insurance policy, although the legal title remains in the vendor, and that the vendor is not the unconditional and sole owner, is this rule and the fact that because of its application loss by fire will fall on the purchaser, as he may be required to pay the price agreed notwithstanding the destruction of the property. Phenix Ins. Co. v. Kerr, supra; Lewis v. New England Fire Ins. Co. (C. C.) 29 F. 496; Johannes v. Standard Fire Office, 70 Wis. 196, 35 N. W. 298, 5 Am. St. Rep. 159; note, 7 Ann. Cas. 498. But these reasons cease to apply where, as here, the contract of sale and purchase has become unenforceable and the loss by fire will fall upon the vendor. "Cessante ratione legis, cessat ipsa lex." If plaintiff had attempted to collect the purchase price of the property in controversy, after having treated the contract of sale and purchase as forfeited and having collected rent for months, it would have been laughed out of court. And, on the other hand, no court in the world, we think, would have enforced the contract to convey in a suit by the Lybrands after they had failed to make the required payments, had surrendered any right to purchase the property, and had paid the rent provided in the event of forfeiture of right to purchase. The heirs of C. R. Lybrand would have stood no better chance of enforcing the contract in court than C. R. Lybrand himself, as any rights which he had to purchase were forfeited by failure to make payment prior to his death, as well as by the estoppel to which we have adverted.

2. *Additional Insurance.*—There is no contention that there was any breach of the warranty as to additional insurance on the building numbered 11; but the breach is alleged to have occurred with respect to the

policies issued on the buildings numbered 7 and 9. As to these policies, the facts are that, when they were first issued, $7,500 insurance was placed on each of the buildings. On October 30, 1925, Siebels, Bruce & Co., of Columbia, insurance agents, who represented both defendant companies, wrote W. P. Williams, the local insurance agent at Wagener, who had written the policies, calling his attention to the fact that two policies aggregating $7,500 had been issued on building No. 9, whereas the total insurance permitted on that building was only $5,000. On November 11, 1925, Mr. Williams, in answering this letter, stated that one of the policies had been written on building No. 9, which should have been written on No. 7, with the result that there was $2,500 more on No. 9 and a like amount less on No. 7 than was intended. He asked whether he should cancel the policy for this amount mistakenly written on building No. 9, or place indorsement thereon correcting the mistake. Not hearing from this letter, he again wrote to Siebels, Bruce & Co. regarding the matter, and on November 24th received an answer advising that they were changing the policy and inclosing to him two copies of indorsement to complete his records.

Mr. Williams testified that, when he received the letter and indorsements from Siebels, Bruce & Co., he attached one of the indorsements to the policy which was to be changed, went over all of the policies on building No. 7 and entered indorsements on them permitting a total of $10,000 on the building, and sent copy of the indorsements so entered to the Stamping Office or South Carolina Rate and Inspection Bureau. He stated also that he went over the other policies, and saw that the indorsements permitting insurance corresponded to the amounts of insurance actually carried. He further testified that, as he was a novice at writing insurance, he called in J. C. Lybrand to assist him; that Mr. Lybrand was present when he made these indorsements, and that afterward Mr. Lybrand took the policies over to his store, that he might compare them with his policies on merchandise, to see if the latter policies properly described the buildings in which the merchandise was situate, fearing that some similar mistake might have occurred with regard to them.

[10] J. C. Lybrand corroborated the statements of Williams as to the corrections and indorsements made on the policies and as to taking them from the bank to his store. He also testified that he put them in the safe in the store and that they were burned up in the fire which destroyed the building. If believed, this testimony effectually disproved the contention that there was a breach of warranty as to additional insurance, as in such case the additional insurance was authorized by agreement in writing added to the policy. Its credibility was a matter for the jury to pass upon.

[11-13] 3. *The Question of Estoppel.*—The alleged estoppel arises out of statements contained in the proofs of loss submitted by plaintiff to defendants. One of these statements was as follows:

"At and from the time said policy was issued, to and at the time said fire occurred, the assured's title to all the buildings described as insured hereunder and the ground upon which said buildings were situate, was that of sole and unconditional owner in fee simple, and there was, and is now, no lien, mortgage, or incumbrance of any nature upon any of said insured property, and no other person than the assured has any interest therein, except J. C., C. R., and Donia A. Lybrand hold an agreement of contract to purchase said property, dated October 1, 1923."

E. B. Jackson, president of plaintiff, testified that prior to the execution of the proofs of loss he had thoroughly discussed the contract in controversy with the adjuster of defendants, and had made it clear that the Lybrands had no further right to purchase thereunder, and that he referred to the contract in the proofs of loss merely in order that all matters which had entered into the controversy might be laid before the company. The proofs of loss were filed April 14, 1926. On April 29th, just two weeks later, he wrote a letter to Siebels, Bruce & Co., agents of defendants, in which he made the contention that the Lybrands had forfeited their right to purchase under the contract and were mere tenants.

To the proofs of loss were attached what purported to be copies of the policies, and the copy of the $5,000 policy on building No. 7 stated that the total insurance permitted on the building was $8,000. There is testimony that this mistake occurred as a result of preparing a copy of the policy from the records available in the office of Mr. Williams, the local agent, and because of the fact that the indorsement made at the time of the change of the $2,500 was not entered by him on the policy register.

The contention of defendants is that these proofs of loss show a breach of the warranties contained in the policies and that plaintiff is estopped to deny their recitals. We

do not think, however, that this is the law. The proofs of loss are not part of the contract of insurance. The contract requires them to be made, but when made they are the mere declarations of the insured, admissible in evidence as such, but not conclusive of the facts which they state. If they contain false statements, upon which the company relies, and so acts or refrains from acting that injury would result therefrom if the statements were denied, an estoppel in pais may arise. 26 C. J. 381, and cases cited. But no such estoppel arises in ordinary cases of erroneous statements in proofs of loss, where the company is not induced thereby to admit a liability which it would not have admitted or otherwise misled into changing its position. Pythias Knights' Supreme Lodge v. Beck, 181 U. S. 49, 56, 21 S. Ct. 532, 45 L. Ed. 741; Insurance Co. v. Newton, 22 Wall. 32, 22 L. Ed. 793; Union Mutual Life Ins. Co. v. Payne (C. C. A. 5th) 105 F. 172; McMaster v. Ins. Co. of North America, 55 N. Y. 222, 14 Am. Rep. 239; Bentley v. Standard Fire Ins. Co., 40 W. Va. 729, 23 S. E. 584, 588; 26 C. J. 381; 14 R. C. L. 1445; Cooley's Briefs on Insurance (2d Ed.) vol. 7, § 5868 et seq.; note Ann. Cas. 1916A, 451.

And, if plaintiff's testimony is accepted, we see no element of estoppel in pais arising out of the proofs of loss. For such estoppel to arise, it must appear, not only that false statements were contained in the proofs of loss but also that defendants were misled thereby, and in reliance thereon either took or refrained from taking some action which would result to their prejudice, if plaintiff be allowed to show the true facts. In this case there is evidence that plaintiff's president told defendants' adjuster what plaintiff's contention was with respect to the contract with the Lybrands. He also wrote their general agent, claiming that under the contract the Lybrands were tenants, "not having met their payments as provided." And in the proofs of loss themselves plaintiff stated its claim of unconditional and sole ownership, notwithstanding its reference to the contract. With regard to the limitation as to additional insurance contained in the $5,000 policy on building No. 7, and the changing of the $2,500 policy to that building from building No. 9, the agents of defendants at Columbia not only knew about the transfer, but directed it, and they must have known that the local agent would make such indorsements on the policies as would prevent them being rendered void as a result of the transfer which they had directed. We do not see, therefore, how the defendants could have been misled by the statements in the proofs of loss.

Nor do we see how they can claim to have been prejudiced in any way. They certainly have not paid anything on the policies as the result of the statements contained in the proofs of loss, and we do not see anything that they have done or refrained from doing through reliance thereon which has prejudiced any defense that they may have had. A defense made through hope engendered of defeating recovery under the policies because of statements contained in the proofs of loss is manifestly not such action or change of position as the law contemplates as the basis of an estoppel precluding the insured from contradicting such statements. If it were, they would constitute an estoppel in practically every contested case where such question arises.

For the reasons stated, we think that there was error in directing a verdict for defendants. The judgment of the court below is accordingly reversed, and the case is remanded for a new trial.

Reversed.