WALLEY v. FRED W. MEARS HEEL CO., Inc.

No. 1297.

District Court, D. Maine, S. D.

Aug. 3, 1933.

278

Lauren M. Sanborn and Francis W. Sullivan, both of Portland, Me., for plaintiff.

Freeman & Freeman, of Portland, Me., for defendant.

PETERS, District Judge.

This is a suit to recover damages for alleged breach of two contracts between the parties covering the sale by the plaintiff to the defendant of a certain quantity of maple lumber produced in Canada and agreed to be delivered at certain prices f. o. b. Auburn, Me., heard by the court with a jury waived.

Two orders, signed by the defendant, accepted in writing by the plaintiff, formed the contracts in question, and were dated respectively July 19, 1929, and December 4, 1929. The first order had appended to it the following words: "This order will be void if there is a tariff tax." The second order had no such language, but it appears from the evidence that the omission was probably an error. The learned counsel for the defendant say that the omitted words should be read into the second order by virtue of the previous correspondence between the parties, touching the terms of the proposed contract, in which, among other things, the defendant wrote the plaintiff that "specifications to be the same as on our order No. 1200." Considering the wording of the orders, I do not think the correspondence touches upon the matter of a tax. That omission from the written contract could be corrected by proceedings in equity, and should be, before the reformed contract is declared on in a suit at law. However, it makes no difference, in my view of the case, in the rights of the parties here, because I cannot sustain the defense based on the language referred to, contained in the first contract.

It seems that the Revenue Act of 1932, approved June 6th (see 26 USCA § 3001 et seq.), carried an import duty on the entry of maple lumber from Canada. At that time the defendant had not taken all the lumber called for by the contracts, although repeatedly urged to do so by the plaintiff, and it also appears that the market price for maple lumber at Auburn had become materially less than the prices the defendant was obligated to pay under its contracts.

On September 1, 1932, plaintiff wrote defendant, calling attention to the alleged unreasonable delay in taking lumber and demanding compliance with the contracts. On September 6, 1932, defendant wrote plaintiff taking the position that the orders were automatically canceled when the tariff tax went into effect. The last shipment was in April, 1932.

From the evidence I consider and find that the words in the order of July 19, 1929, "this order will be void if there is a tariff tax," were inserted at the request and wholly for the benefit of the plaintiff. The plaintiff made prices for the lumber f. o. b. Auburn, Me. If later, by reason of changes in tariff rates, a higher duty should be imposed, the plaintiff might suffer a considerable loss, as he had made prices for the lumber after entry into the country and transportation to its destination. As no one knew in 1929 what the new duties, if any, would be, the obvious way to protect the plaintiff was to provide for the cancellation by him of the contract if any duty should be imposed. The defendant was protected by the guaranteed prices for the lumber delivered at Auburn. The circumstances of the case support the testimony of the plaintiff that the conditional clause referred to was inserted for his benefit. This being true, it follows as a matter of law that the plaintiff may waive the condition inserted in the contract for his benefit, and that the defendant has no right to insist on the performance of the condition.

The quotation from Prof. Williston on this point, found in the comprehensive brief of the plaintiff's counsel, is apposite and follows: "Waiver of Conditions.—If a condition in the contract is wholly for the benefit of one party thereto, he may waive it. The other party cannot insist that the condition shall be performed. A common instance of this arises where a contract, as a lease or insurance policy, declares that it shall be void on the happening of a certain contingency. If the nature of the contingency is such as to show clearly that the provision was inserted for the benefit of one party only, the meaning given to the word 'void' is voidable at the option of this party, and if he does not choose to avoid the contract, he need not do so." Williston on Sales (1st Ed.) § 192, p. 242.

Mr. Justice Holmes puts it this way in his opinion in Stewart v. Griffith, 217 U. S. 323, 30 S. Ct. 528, 529, 54 L. Ed. 782, 19 Ann. Cas. 639: "The condition plainly is for the benefit of the vendor, and hardly less plainly for his benefit alone, except so far as it may

have fixed a time when Stewart might have called for performance if he had chosen to do so, which he did not. This being so, the word 'void' means voidable at the vendor's election, and the condition may be insisted upon or waived, at his choice."

If the contract in suit had been drawn by a lawyer, doubtless the word "voidable" would have been used, and to make the meaning clearer the words "at the election of the shipper" would have been added. Under the circumstances of this case, I feel that the language used means the same thing.

■ Further, the defendant is not in a position to take advantage of the condition making the contract void or voidable, even if it was inserted for his benefit. It was in default under its contract before the Tariff Act was passed. No time for shipment of lumber being specified, the usual rule of reasonable time would apply, and, as the orders were both made in 1929, certainly a reasonable time had elapsed, and the defendant was in default. The letter of September 1, 1932, from the plaintiff to the defendant was written to fix a liability and not to waive a default, unless the defendant accepted the offer.

■ "Unless there are clear words to the contrary, a clause making a contract void must be read subject to the condition that the party who is seeking to set up the invalidity is not himself in default." (Quoted from a leading English case cited by defendant, New Zealand Shipping Co. v. Societe des Atliers, 2 K. B. 77.)

As stated by one of the law lords on appeal in the same case: "The decisions on the point are uniform, and are really illustrative of the very old principle handed down by Lord Coke (Co.. Litt. 206 b) that a man shall not be allowed to take advantage of a condition which he himself brought about."

■ If the plaintiff had the right to waive the condition in this contract, as I hold that he had, it is clear that he did waive it, and that there was a breach of the contract by the defendant.

There was at one time some difference of opinion between the parties relative to the amount of lumber not taken by the defendant under both contracts, and some confusion in the correspondence between them which seems to have been settled by the acquiescence of the plaintiff in the definite assertion of the defendant in its letter of June 30, 1931, that on the first order there were then 106,033 feet of the kind of lumber referred to as 8/4 undelivered. The same letter states that 47,639 feet out of the order of 150,000 of so-called 9/4 had been delivered, leaving 102,361 feet undelivered. These two amounts, approximating 208,394 feet, represent the amount declared on in the plaintiff's writ. The defendant in its letter of June 30, 1931, claimed that a part of the order had been canceled, but there is no satisfactory evidence that any such change in the contract was agreed to by the plaintiff.

As to the second order, the assertion by the defendant in its letter of June 30, 1931, that there was then a balance of 89,104 feet undelivered, was not apparently disputed by the plaintiff, and is the amount declared on in the writ, less two carloads subsequently taken by defendant, aggregating 28,420 feet in reduction of the balance of 89,104 feet, leaving 60,684 feet undelivered.

These are the amounts I find the defendant neglected and refused to take and pay for under its contracts, for which failure the plaintiff is entitled to recover damages.

The parties have agreed that the measure of damages is the difference between the contract price and the market value of such lumber at Auburn on September 1, 1932.

As there were three different grades of lumber, carrying different prices, as well as different sizes, and as it is practically impossible to make a finding from the records of the proportion of each grade undelivered, at least consistent with the figures in the correspondence, I have adopted the percentages of different grades agreed upon by the parties, viz. 14 per cent. for the grade denominated F. A. S., 73 per cent. for C. & S., and 13 per cent. for common.

This settles everything except figures of fair market value in Auburn in September, 1932. The witnesses differed slightly on this point. The plaintiff's tabulation takes the prices testified to by his own witnesses and himself. Witnesses for the defendant placed the figures somewhat higher. Taking all the testimony into consideration, I fix the market value of the lumber in question in the Auburn market on or about September 1, 1932, at $63.50 per thousand for F. A. S., $43.50 for C. & S., and $32 for common. Applying these figures, the result would be as follows: Order of July 19, 1929, undelivered 208,394 feet, of which 14 per cent. was to be paid for at $93 per thousand feet, the contract price, 73 per cent. at $63, and 13 per cent. at $47, making a total of $13,570.62.

Using the same principles and the same quantity at the prices I have fixed as the mar-

ket price in Auburn at the time of the breach, I find:

14% of 208,394 F. A. S., or 29,174 feet @ $63.50.................$1,852.61
73% of 208,394 C. & S., or 152,128 feet @ $43.50.................6,617.56
13% of 208,394 common, or 27,091 feet @ $32.00.................866.91

Total market value.........$9,337.08

Deducting the market total value from the total agreed price leaves $4,233.54 as the damages for the breach of the first contract.

Order of December 4, 1929: Undelivered, 60,684 feet, of which 14 per cent. was to be paid for at $90 per thousand feet, the contract price, 73 per cent. at $63, and 13 per cent. at $44, making a total of $3,902.70.

Using the same principles and the same quantity at the prices I have fixed as the market price in Auburn at the time of the breach, I find:

14% of 60,684 F. A. S. or 8,496 feet @ $63.50.................$ 539.49
73% of 60,684 C. & S. or 44,299 feet @ $43.50.................1,926.90
13% of 60,684 Common, or 7,928 feet @ $32.00.................253.69

Total market value.........$2,720.08

Deducting the market total value from the total agreed price leaves $1,182.62 as the damages for breach of the second contract, or a total of $5,416.16 as the damages for which the plaintiff is entitled to judgment, with interest from this date and costs.

Requests for findings and rulings are refused, except so far as they are embodied in or implied from the above.