257 F.2d 242
 James B. KILSHEIMER, III, and Jacob-Grumet, Grumet,
Receivers of the New York, Ontario and Western
Railway Company and subsidiary
companies, Appellees,
v.
ROSE & MOSKOWITZ, Sidney G. Rose and Philip L. Moskowitz, Appellants.
 No. 370, Docket 25112.
 United States Court of Appeals Second Circuit.
 Argued April 18, 1958.
Decided July 17, 1958.
 
 Charles R. Taine, New York City (Franklin Feldman, Lewis G. Cole, Stroock & Stroock & Lavan, New York City, on the brief), for appellants.
 Robert L. Tofel, Asst. U.S. Atty., Southern District of New York, New York City (Paul W. Williams, U.S. Atty., Southern District of New York, New York City, on the brief), for plaintiff-appellee.
 F. W. H. Adams, New York City (Harold H. Meyers, Henry J. Formon, Jr., Satterlee, Warfield & Stephens, New York City, on the brief), for receivers.
 Before CLARK, Chief Judge, and WATERMAN and MOORE, Circuit Judges.
 MOORE, Circuit Judge.
 
 
 1
 The appellants, Rose & Moskowitz, Sidney G. Rose and Philip L. Moskowitz, the successful bidders at auction for nine segments of the New York, Ontario & Western Railway Company properties, appeal from an order directing them to pay the balance of the purchase price of the Railway properties purchased by them. The grounds urged by appellants for reversal are primarily: (1) lack of jurisdiction over the properties by the Receivers; (2) the title to many of the properties was unmarketable; and (3) specific performance cannot be decreed because they cannot be held for more than the forfeiture of their deposit of $575,200 made on account of the purchase price.
 
 
 2
 The Railway had been in reorganization for over twenty years under section 77 of the Bankruptcy Act (11 U.S.C.A. section 205). During this period taxes of some $7,500,000 had accrued in favor of the United States. Early in January 1957 the United States sought permission from the court in charge of the reorganization proceedings to institute an action to enforce its tax lien under section 7403 of the Internal Revenue Code (26 U.S.C.A. section 7403). The court granted permission by order dated January 7, 1957 but expressly forbade the transfer of any of the Railway properties to receivers who might be appointed in the tax case. On January 10, 1957 a complaint in the tax action was filed in the Southern District of New York which sought the appointment of a receiver. By order dated January 12, 1957 and filed on January 14, 1957 the court appointed James B. Kilsheimer, III, and Jacob Grumet as Receivers, the appellees herein. The Receivers demanded that the reorganization Trustee turn over the properties. The Trustee refused. On January 31, 1957 the reorganization court entered on order directing the transfer of the properties to the Receivers and dismissed the reorganization proceedings as of February 9, 1957. The court thereupon in the tax action entered an order on February 4, 1957 supplementing the order of January 14, 1957 providing that that order should be effective as of February 9, 1957 and should act as the authority of the Receivers to receive the Railway properties. The sequence of these dates is important because of appellants' claim of lack of jurisdiction over the properties by the Receivers.
 
 
 3
 Since it became apparent to the court that the Railway could not continue its operations, it authorized the Receivers to sell the properties to satisfy the tax lien. Although the court directed that the properties be sold free of liens, the Notice of Sale, which was annexed to the order, dated May 15, 1957, specifically stated that the 'deeds of real property and the bills of sale of personal property to be conveyed shall contain no covenants, warranties or representations by the Receivers * * * (and) convey, free from liens, only the right, title and interest of the Receivers, subject to: such state of facts as an accurate survey or surveys may show; covenants, easements, restrictions, conditions, reversions and agreements affecting the property conveyed.' (Notice of Sale, par. 13.) The sale was conducted by the court on June 25, 26, 27, 1957. Appellants were the successful bidders on nine segments, the aggregate amount being $2,876,000. Appellant Rose stated that he had spent more than a year in an attempt to survey the property and that he came to the sale well informed as to what he was buying. The court set July 8, 1957 as the date for a hearing on the confirmation of the bids. At the repeated request of appellants' counsel and by the court's direction, the Receivers instituted proceedings before the Interstate Commerce Commission to obtain an order authorizing a complete abandonment of the Railway system and its operation. The closing of title originally set for September 10, 1957 in the Notice of Sale was to be adjourned if the abandonment proceedings had not been completed by that date. The abandonment order dated October 10, 1957 having been obtained, an order in the tax case dated October 22, 1957 was entered on the express written consent of counsel for appellants which directed closing of title on the segments purchased by them on November 21, 1957. On the latter date appellants refused to take and consummate their purchase. Accordingly, on December 6, 1957 the Receivers moved for an order declaring appellants to be in default and directing them to take title and pay the balance of the purchase price; as alternative relief the Receivers asked for authority to re-offer the nine segments holding appellants liable for all loss and expense. By cross-motion dated December 13, 1957 appellants sought an order declaring the bids to be null and void and directing the Receivers to repay the amounts deposited thereon. The court granted the Receivers' motion for specific performance of the bids and denied the cross-motion.
 
 Jurisdiction
 
 4
 Appellants base their argument as to lack of the Receivers' jurisdiction over the properties upon 28 U.S.C.A. section 754 which requires that a receiver within ten days after the entry of the order of appointment file copies of the complaint and order in the district court for each district in which the property is located. Failure to file 'shall divest the receiver of jurisdiction and control over all such property in that district.' This argument completely disregards the facts presented in this tax receivership. At the time of their appointment, on January 14, 1957, there was no property as to which the Receivers could obtain either possession or title. All the Railway properties were vested in the reorganization Trustee. Not until the order of January 31, 1957 was entered could the Receivers have obtained title and this order fixed February 9, 1957 as the date of transfer. On February 9, 1957 the Receivers obtained title of all the Railway properties theretofore vested in the Trustee. They did not and could not have obtained title on January 14, 1957. However, even if section 754 were applicable, there was compliance therewith because the original order entered January 14, 1957 was supplemented on February 4, 1957 so as to cover the situation created by the dismissal of the reorganization proceedings in the order of January 31, 1957. Therefore, when on February 7, 1957 the Receivers filed the necessary papers in the various districts in which there were Railway properties there was sufficient compliance with section 754.
 
 Defective Title
 
 5
 Appellants now set forth eight separate defects which they claim made the title to the properties so unmarketable that they were justified in rejecting deeds thereto. Little purpose would be served by analyzing each of these alleged defects. The prospective purchasers were advised in the Notice of Sale, which by its acceptance constituted the contract between the parties, that the deed or deeds of real property and the bills of sale of the personal property to be conveyed would contain no covenants, warranties or representations by the receivers and that all that the receivers would convey would be such title as they might have subject to existing covenants, easements, restrictions, conditions, reversions or other agreements affecting the property. The sale was conducted during three days, June 25-27, 1957. Appellants knew what they were buying and specifically so stated. The technicalities of title which they now raise are without merit in view of this factual background. Even on October 22, 1957 appellants agreed to the closing date of November 21, 1957 and did not assert any title defects which in their opinion might affect the validity of the transaction to which they had committed themselves.
 
 Specific Performance
 
 6
 Finally, appellants argue that, even assuming that they were in default, they cannot be held for more than the forfeiture of their deposits on the segments on which their bids were confirmed. They rely on the express language of the notice of Sale to the effect that 'in case of default of any payment, the deposit shall be retained as liquidated damages.' They, therefore, claim that the rights of the Receivers are limited to the retention of their deposit of $575,200 and that specific performance of the payments of the balance cannot be decreed.
 
 
 7
 The Restatement of the Law, Contracts, section 378, provides 'The fact that a contract contains a provision for the payment of a penalty or liquidated damages for breach of a promise is not a bar to the specific performance of the promise.' In Feldman v. American Palestine Line, 2 Cir., 1927, 18 F.2d 749, Judge Swan, writing in a case involving a purchase of a steamship sold under court order at a public auction, said 'A purchaser of property sold under order of court submits himself to the jurisdiction of the court, and, when he refuses without cause to carry out his contract, he may be compelled to do so by rule or attachment issuing out of the court under whose decree the sale is had' (at page 751). This case does not answer the question as to the effect of the liquidated damage clause. In Biscayne Shores v. Cook, 3 Cir., 1933, 67 F.2d 144, Judge Forman had to deal with the phrase 'And such payments shall be retained by the party of the first part in full satisfaction and liquidation of all damages by it sustained.' Even these words, which are much stronger than those in the present Notice of Sale, he held were 'not sufficient to negative the doctrine so thoroughly established that the clause is for the benefit of the vendor and cannot be held to deprive it of the benefit of its option to sue upon the contract' (at page 145). The court reversed the decision of the district court which had sustained the defense interposed by the vendees that they were relieved of liability under the contract because of this clause. So holding the court relied upon Stewart v. Griffith, 217 U.S. 323, 30 S.Ct. 528, 54 L.Ed. 782, also relied upon by Judge Ryan. In Roth v. Hartl, 1950, 365 Pa. 428, 75 A.2d 583, the court was faced with a clause which read that in the event of refusal or neglect to perform, the parties agreed 'to pay to the other, as assessed and liquidated damages and not as a penalty the sum of Six Hundred Dollars' (75 A.2d at page 585). The Supreme Court of Pennsylvania concluded that 'The presence in such a contract of a provision for liquidated damages will not restrict the remedy thereto or bar specific performance unless the language of the part of the agreement in question, or of the entire agreement, together with other relevant evidence, if any, shows a contrary intent' (75 A.2d at page 586).
 
 
 8
 The Supreme Court of Michigan in Randall v. Douglass, 1948, 321 Mich. 492, 32 N.W.2d 721, had before it the question of whether a 'deposit made herein as liquidated damages' gave the defendant the option to forfeit the $1,000 deposit and be released from liability or whether the vendor was entitled to force him to complete the purchase. The court after reviewing the weight of authority concluded that the decree of specific performance should be affirmed and that 'specific performance will be decreed notwithstanding a clause in regard to stipulated damages unless it clearly appears from the contract that it was the intention of the parties that by payment of stipulated damages the party sought to be held would be released' (32 N.W.2d at page 723). See, also, the lengthy opinion of Judge Thomas of Connecticut in Plimpton v. Mattakeunk Cabin Colony, D.C.D.Conn.1934, 9 F.Supp. 288.
 
 
 9
 Judge Ryan's opinion below clearly sets forth the particular reasons why specific performance should be decreed under the circumstances presented upon the sale of these railroad properties. The facts are within the type of situations in which the courts have held that specific performance may be decreed despite the liquidated damage clause. In view of the state of the law at the time the appellants tendered their bids it would have been a simple matter to have insisted upon a clause limiting their liability to the amount of the deposit. In all probability the Receivers would not have accepted such a modification. Since no modification was requested, appellants must be bound by the law which strongly indicated that they would be subject to a specific performance decree.
 
 
 10
 The order appealed from is affirmed.