KLINK et al. v. CHICAGO, R. I. & P. RY. CO.†

(Circuit Court of Appeals, Eighth Circuit.   January 4, 1915.)

No. 4126.

**1. Judgment** ☞72—Rendition—Pleadings—Consent.

Where, on a motion for judgment on the pleadings, the court gave plaintiffs' counsel the option of voluntarily dismissing the action or submitting to judgment on the pleadings, whereupon counsel elected to submit to judgment on the pleadings, such election was not a consent by plaintiffs that judgment should be so rendered, but only that the court should render such judgment on the pleadings as it deemed lawful.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 130; Dec. Dig. ☞72.]

**2. Pleading** ☞343—Judgment on Pleadings—Validity.

A judgment rendered on the pleadings is valid only in case it is sustained by undisputed facts appearing in the pleadings.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1048–1051; Dec. Dig. ☞343.]

**3. Appeal and Error** ☞185—Removal of Causes—Improper Federal District—Waiver—Questions Not Raised at Trial.

Where citizens of Colorado and a citizen of Montana sued defendant railroad company, a corporation of Illinois and Iowa, in the state court of Colorado, and the railroad company removed the case to the federal District Court of Colorado, and plaintiffs made no motion to remand, the objection that the cause was not removable to such district because all of the plaintiffs in error were not citizens of Colorado was waived, and could not be urged for the first time on a writ of error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1166–1176, 1375; Dec. Dig. ☞185.]

**4. Appeal and Error** ☞725 — Assignments of Error — Judgment on Pleadings.

Where the court has rendered judgment on the pleadings for either party, an assignment of error, stating generally that the court erred in rendering judgment on the pleadings, is sufficient.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3002–3005; Dec. Dig. ☞725.]

**5. Appeal and Error** ☞758—Briefs—Specification of Errors.

Where about the only question discussed in the brief of plaintiffs in error was an alleged error in rendering a judgment on the pleadings, the Court of Appeals would not refuse to consider the question because the assignment that the court erred in rendering judgment on the pleadings was not set forth in the brief of plaintiffs in error under the head of "specification of errors."

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3093; Dec. Dig. ☞758.]

**6. Pleading** ☞345—Interstate Commerce—Transportation of Animals—Feeding in Transit—Judgment on Pleadings.

Where plaintiffs pleaded breach of an interstate railroad company's contract to transport, feed, and fatten sheep in transit, and then retransport them to market for sale, and also pleaded wrongful appropriation of the proceeds of the sale to the carrier's use, the fact that the carrier may not have had authority under its filed tariffs to feed and fatten the sheep in transit did not entitle it to judgment on the pleadings.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1055–1059; Dec. Dig. ☞345.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

† Rehearing denied March 19, 1915.

7. CARRIERS ⊛=207—TRANSPORTATION OF ANIMALS—FEEDING IN TRANSIT—
CONTRACT—VALIDITY.

Where an interstate carrier's filed tariffs for the transportation of animals provided for feeding in transit and prescribed particular prices for feed when animals were held for a greater or less time than 15 days, there being no limitation on the time, a carrier's contract to feed animals in transit without reference to time would be valid if the same privilege was allowed to all shippers.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 129–239; Dec. Dig. ⊛=207.]

In Error to the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Action by Fred Klink and others against the Chicago, Rock Island & Pacific Railway Company. Judgment for defendant on the pleadings, and plaintiffs bring error. Reversed and remanded.

John T. Bottom and Milnor E. Gleaves, both of Denver, Colo., for plaintiffs in error.

Paul E. Walker, of Topeka, Kan., and William V. Hodges, of Denver, Colo., for defendant in error.

Before CARLAND, Circuit Judge, and T. C. MUNGER and YOUMANS, District Judges.

CARLAND, Circuit Judge. It is assigned as error that the trial court erred in rendering judgment in favor of the railway company, upon the pleadings: First, because it had no jurisdiction; second, because the pleadings did not warrant such a judgment. The action was commenced in the district court for the city and county of Denver, and was removed to the Circuit Court of the United States for the District of Colorado by the railway company. The amended complaint of plaintiffs in error alleged, in substance: That they were on February 12, 1908, the owners of 22,334 head of yearling wethers at Gallego, state of Chihauhua, republic of Mexico, and on said date entered into an agreement with the railway company for the transportation of said sheep from Gallego via El Paso, Tex., to Stockdale, Ill., there to be unloaded by the railway company and fed and fattened for the Chicago market, and then transported to the Union Stockyards, Chicago, Ill. That the consideration for the care and feeding of said sheep at Stockdale, Ill., over and above the transportation charge, was about $1 per head per ton on hay, corn, and screenings above the weekly market price of said feed. That as a part of said agreement the Railway Company represented to plaintiffs in error that said sheep would be ready for the Chicago market within 45 or 60 days after their arrival at the said feedyards of the railway company, and that said railway company had in its employ men thoroughly competent to care for and feed said sheep for the Chicago market. That in pursuance of said contract plaintiffs in error delivered said sheep to the railway company for transportation, consigning 11,310 head in the name of Klink and Simonson to Smith Bros., Commission Company, Union Stockyards, Chicago, Ill., and 11,024 head in the name of C. W. Trimble to Clay, Robinson & Co., to the same destination. That the Railway Company received and ac-

cepted said sheep in pursuance of said agreement and transported the same to its feedyards at Stockdale, Ill. That the Railway Company, its officers, agents, and employés wholly failed to give said sheep the proper care and attention, or to properly feed them, and wholly failed to carry out the terms of its said contract, and wrongfully failed to fatten said sheep and to get them ready for the Chicago market; and as a result of the want of care, as aforesaid, and by reason of the negligence of the defendant, its officers, agents, and employés in the care and feeding of said sheep, many of said sheep, exceeding 1,094 in number thereof died. That the remainder of said sheep, by reason of the failure and neglect of the defendant, its officers, agents, and employés to properly feed and care for them were reduced in flesh and injured and not fattened according to said agreement, and were damaged to such an extent that they were not marketable as agreed. That under and by virtue of the agreement between plaintiffs in error and the railway company, said sheep would have been fattened for market at a date prior to May 15, 1908, but that the majority of the sheep, because of the railway company's wrongful failure to properly feed and fatten said sheep, and because of their damaged condition thereby occasioned, were not and could not be marketed or otherwise disposed of as fattened sheep, until the latter part of June, 1908. That they were, on or about the last-mentioned date, sold at Chicago, and by the wrongful direction of the railway company the moneys received from the sale of said sheep was improperly paid to and the railway company wrongfully received the same, falsely representing that the moneys so received by them of the proceeds of the sale of said sheep, $18,980.93, was to cover freight charges, and $68,963.11 to cover its charges for the care, feeding, and fattening of said sheep. That by reason of the want of care and negligence on the part of the railway company, its officers, agents, and employés, and by reason of the wrongful appropriation and withholding of the money as alleged in the complaint, plaintiffs in error were damaged in the sum of $75,000. The plaintiffs then prayed judgment against the railway company for the sum of $75,000, with interest. The railway company filed an answer to this complaint.

For the sake of brevity it does not seem necessary to set forth all the allegations of the answer, which are quite lengthy, but only to set forth that part of the answer which, according to the brief of the railway company, justified the judgment below. In other words, it is not necessary to set forth those allegations of the answer which merely created an issue with the complaint, or which would require proof in order to be availed of as a defense. The answer of the railway company alleged that subsequent to the 12th day of February, 1908, plaintiffs in error tendered to the railway company for shipment at Texhoma, Okl., 22,334 head of yearling wethers, being the same animals mentioned in the complaint; that the railway company accepted said sheep for shipment to Chicago, Ill., by way of the town of Stockdale, Ill., and thereupon issued its certain live stock contracts in writing, which contracts were signed by the plaintiffs in error or their duly authorized agents. The answer further alleged:

"That at the time when the shipments of sheep alleged in the complaint were made, the defendant was a common carrier engaged in interstate com-

merce and subject to each and every of the provisions of the act of Congress approved February 4, 1887, entitled, 'An act to regulate commerce,' and all acts amendatory thereof. That under and by virtue of said act of Congress and all acts amendatory thereof, it had theretofore jointly with connecting carriers, issued and published and filed with the interstate Commerce Commission of the United States, and posted and filed as required by said acts, certain official tariffs known and designated as follows:

" '1. Southwestern Tariff Committee's Tariff No. 7–M.
" '2. Chicago, Rock Island and Pacific Railway Company's Tariff No. 18400.
" '3. Chicago, Rock Island and Pacific Railway Company's Tariff No. 21500.'

"Which said tariffs were then and there in force and effect and were the only tariffs applicable to the shipment of sheep referred to in the complaint and under which the same could be lawfully moved, by this defendant or its connecting carriers; that in and by said tariff designated as 'Southwestern Tariff Committee's Tariff No. 7–M,' it was provided that the rate upon sheep from El Paso, Tex., to Chicago, Ill., shipped in double deck cars, with a minimum weight of 22,000 pounds, at shipper's risk, with the released valuation with right to feed in transit, was and should be 74½ cents per hundred pounds, with an additional charge of $2 per car for delivery of such sheep to the Union Stockyards in Chicago, Ill.; that for a similar shipment without limitation upon the carrier's liability, a rate of 120 per cent. of said rate of 74½ cents per hundred pounds should be charged; that in and by said tariff designated as 'Chicago, Rock Island & Pacific Railway Company's Tariff No. 18400,' it was provided as follows:

" 'Feeding in transit is only allowed on live stock at regular feeding stations, which are Eldon, Muscatine and Valley Jctn., Iowa, Silvis and Stockdale, Illinois, the above points having capacities for the following number of head and kinds of live stock:

| Station. | Pens. | Capacity. | | | |
|---|---|---|---|---|---|
| | | Cattle | Sheep | Hogs | Horses |
| Eldon | 58 | 1000 | ...... | .... | 750 |
| Muscatine | 12 | 600 | 1000 | 840 | 250 |
| Silvis | 52 | 1560 | 3120 | 3120 | 1560 |
| Stockdale | .. | .... | 25000b | .... | .... |
| Stockdale | .. | .... | 10000c | .... | .... |
| Valley Jctn. | 14 | .... | ...... | 840 | .... |
| Valley Jctn. | 3 | 90 | ...... | .... | 90 |

(b)   In Bars.          (c)   In Pasture.

" 'When shipments are tendered you with shipping directions to stop and feed at stations other than those mentioned above, or to fill up or partially unload commodities, you will call the attention of the shippers to our rules, and if they insist upon the shipping instructions, you will bill to the point at which they desire car to be stopped at full tariff rate (instead of to ultimate destination), noting on billing "Car to be forwarded to ———— (ultimate destination)," and advise the shipper that the charges will be at full local rates to and from stopping points.'

"That in and by said tariff designated as Chicago, Rock Island & Pacific Railway Company's Tariff No. 21500, that the defendant should charge for feed supplied to sheep in transit while at said Stockdale Yards, or other yards on the line of this defendant where feeding in transit is permitted by said tariff, as follows:

" 'When held for more than fifteen days: $16.00 per ton for prairie hay, $20.00 per ton for alfalfa hay, $24.00 per ton for corn, 75 cents per bushel for oats, $16.00 per ton for screenings and 75 cents per 100 lbs. for bedding.

"'*When held less than fifteen days:* $20.00 per ton for prairie hay, $22.00 per ton for alfalfa hay, $30.00 per ton for corn, 75 cents per bushel for oats, $20.00 per ton for screenings and 75 cents per 100 lbs. for bedding.'"

Plaintiffs in error filed a reply to the answer of the railway company, denying a large part of the answer and praying for judgment as originally demanded in the complaint. As to the allegation hereinbefore quoted from the answer, in regard to the tariffs of the railway company, plaintiffs in error in their reply alleged:

"That as to whether or not the defendant and its connecting carriers had published and filed a tariff or tariffs, as in said defense alleged, these plaintiffs cannot, within the time permitted for the filing of this replication, obtain sufficient knowledge or information upon which to base a belief, and, for the purposes of this replication, as to said defense, therefore deny the same."

[1] On these pleadings the railway company moved for judgment. The trial court gave counsel for plaintiffs in error the option of voluntarily dismissing the action or submitting to judgment on the pleadings. Counsel for plaintiffs in error elected to submit to judgment on the pleadings, whereupon judgment was entered on the pleadings in favor of the railway company and against the plaintiffs in error for costs. It may be said here that the election of counsel for plaintiffs in error was not a consent that judgment should be rendered against the plaintiffs in error on the pleadings, but that the court should render such judgment on the pleadings as the court deemed lawful. The court, of course, did not need the assistance of counsel to do this, but the result of the proceedings was simply that the court gave to counsel for plaintiffs in error the privilege of dismissing the case if they were so advised.

[2] The judgment which was rendered, in order to be valid, must be sustained by undisputed facts appearing in the pleadings. The mere fact that the answer denied material allegations in the complaint, of course, would give no authority to render judgment against the plaintiffs in error on the pleadings any more than it would allow the court to render judgment against the railway company on the pleadings. It is claimed that the language above quoted from the reply of plaintiffs in error, in regard to the railway company's tariffs, did not constitute a denial under the system of pleading prevailing in Colorado; it being contended that the tariffs are a public record of which all parties interested must take notice, and that one may not deny the existence of a public record on information and belief. This criticism of the reply is probably well founded, but we pass the consideration of the same for the reason that in disposing of the case we will take the allegations of the answer in regard to the railway company's tariffs as being correct. Before proceeding to the merits we will dispose of some preliminary objections made on each side. Counsel for plaintiffs in error claim that the case should be reversed and remanded to the lower court with direction to remand the same to the state court wherein it originated, for the reason that the United States Circuit Court for the District of Colorado never obtained jurisdiction of the same. This contention is based upon the following facts:

[3] It appears from the petition for removal that the plaintiffs in

error, Fred Klink, Charles W. Trimble, and Edgar H. Trimble were, at the time of the commencement of the action and ever since, citizens of the state of Colorado; that plaintiff in error, Lee Simonson, was at the time of the commencement of the action and at all times since a citizen of the state of Montana; that the railway company was at the time of the commencement of the action and ever since has been a corporation duly organized and existing under and by virtue of the laws of the states of Illinois and Iowa. It thus appears that the district of Colorado is not the district whereof all the plaintiffs in error are citizens. We think, however, that this objection to the jurisdiction of the trial court was a matter that could be waived. The railway company by removing the case from the state court, of course, made no objection to the place of trial, neither did the plaintiffs in error by a motion to remand, and first raised the question of jurisdiction in this court. It was said in Re Moore, 209 U. S. 490, 28 Sup. Ct. 706, 52 L. Ed. 904, 14 Ann. Cas. 1164:

"As we have seen in this case, the defendant applied for a removal of the case to the federal court. Thereby he is foreclosed from objecting to its jurisdiction. In like manner, after the removal had been ordered, the plaintiff elected to remain in that court, and he is, equally with the defendant, precluded from making objection to its jurisdiction."

The following cases sustain the same proposition: Western L. & S. Co. v. Butte & Boston Consolidated Mining Co., 210 U. S. 368, 28 Sup. Ct. 720, 52 L. Ed. 1101; Kreigh v. Westinghouse, Church, Kerr & Co., 214 U. S. 249, 29 Sup. Ct. 619, 53 L. Ed. 984; Louisville & Nashville R. R. Co. v. Western Union Tel. Co., 234 U. S. 369, 34 Sup. Ct. 810, 58 L. Ed. 1356; McPhee & McGinnity Co. v. U. P. R. R. Co., 158 Fed. 5, 87 C. C. A. 619 (C. C. A., 8th Cir.). We think that under the facts appearing in the record the trial court clearly had jurisdiction.

[4] It is objected by counsel for the railway company that no sufficient assignments of error appear in the record to authorize this court to review the action of the lower court in entering judgment, and the case of Choctaw, O. & G. R. Co. v. Jackson, 192 Fed. 792, 114 C. C. A. 12, is cited in this behalf. In the case cited there was a full trial, and it was suggested that an assignment of error in the following words: "The court erred in entering the judgment finally entered in this cause"—was not sufficient to command consideration.

It appears, however, that this court did, in the case cited, proceed and consider the point which it suggested was not sufficiently raised. Whatever may be the rule in ordinary cases, we think that in a case where the court has rendered judgment upon the pleadings for either party, an assignment of error, stating generally that the court erred in rendering the judgment upon the pleadings, is sufficient, as it directs the attention of this court directly to the point to be considered.

[5] It is next claimed by counsel for the railway company that there is no specification of the errors relied upon, set forth separately and particularly in the brief of counsel for plaintiffs in error. It is true that the assignment of error that the court erred in rendering judgment against the plaintiffs in error on the pleadings is not set forth

in the brief of their counsel under the direct head of "specification of errors," but as it is about the only question discussed in the whole brief, we think it would be hypercritical not to consider the point raised for this reason. We come now to what may be called the merits.

Counsel for the railway company in their brief rely alone upon the following proposition to sustain the action of the court below in rendering the judgment against the plaintiffs in error.

"(d) The agreement to feed and fatten, upon which the amended complaint is predicated, required the defendant in error to exercise skill as an agister, outside of carriage, and outside of the obligation to furnish, within reasonable limits, such food as a shipper might wish to buy for the care of his stock in transit. Such an obligation the carrier did not offer to assume towards the public generally, nor did it make or publish a tariff therefor. Such a contract, had it been in fact made, would have been unlawful and void, and the court did not err in directing judgment on the pleadings."

We understand this proposition to mean that, conceding for the sake of argument that the railway company made a contract with plaintiffs in error to transport its sheep and feed and fatten them at Stockdale, Ill., for the Chicago market, such an arrangement is not extended to all shippers by the tariffs of the railway company on file with the Interstate Commerce Commission, and that therefore the contract is void as discriminatory under the following decisions:

"In the matter of rates, Kansas City, Memphis & Birmingham Railroad Company, 8 Interst. Com. R. 121, at p. 135; Shiel v. Illinois Central R. Co., 12 Interst. Com. R. 211; Chicago, Rock Island & Pacific Ry. Co. v. Hardwick Farmers' Elevator Co., 226 U. S. 426 [33 Sup. Ct. 174, 57 L. Ed. 284, 46 L. R. A. (N. S.) 203]; N. Y., N. H. & H. R. Co. v. I. C. C., 200 U. S. 361 [26 Sup. Ct. 272, 50 L. Ed. 515]; Chicago & Alton R. R. Co. v. Kirby, 225 U. S. 155 [32 Sup. Ct. 648, 56 L. Ed. 1033, Ann. Cas. 1914A, 501]; Kansas City Southern Ry. Co. v. Carl, 227 U. S. 639 [33 Sup. Ct. 391, 57 L. Ed. 683]; Clegg v. St. Louis & S. F. R. Co., 203 Fed. 971 [122 C. C. A. 273]; Elwood Grain Co. v. St. Joseph & G. I. Ry. Co., 202 Fed. 845 [121 C. C. A. 153] (C. C. A., 8th Cir.); Cleveland, C., C. & St. L. Ry. Co. v. Hirsch, 204 Fed. 849 [123 C. C. A. 145]; Engemoen v. Chicago, St. P., M. & O. Ry. Co., 210 Fed. 896 [127 C. C. A. 426]; Winn v. American Express Co., 149 Iowa, 259, 128 N. W. 663; Siemonsma v. Chicago, M. & St. P. Ry. Co. [158 Iowa, 483] 139 N. W. 1077; St. Louis, I. M. & S. Ry. Co. v. West Bros. [Tex. Civ. App.] 159 S. W. 142; Chicago, Rock Island & Pacific Ry. Co. v. Beatty (Okl.) 141 Pac. 442."

[6] This in our opinion, however, is taking a one-sided view of the cause of action stated in the complaint. It overlooks the fact which appears in the complaint that the railway company got all the mutton by wrongfully appropriating the proceeds arising from the sale thereof to its own use. Conceding for the sake of argument that the railway company had no authority under its filed tariffs to feed and fatten sheep in transit, it by no means follows that, having made such a contract, they can, by virtue thereof, take possession of the sheep and convert them to their own use and benefit. We are not now determining who may be in the right in regard to this controversy. We are simply now considering whether the plaintiffs in error on the record before us have a right to a judicial hearing for the purpose of determining as to what has become of the flock of sheep that they once owned. The plaintiffs in error admit in their pleading that the railway company is entitled to their lawful charge for transporting the sheep and

for feed furnished them at Stockdale, Ill., but they complain that the railway company not only got this lawful charge, but also sold the sheep and wrongfully appropriated the proceeds thereof in the sum of over $68,000 by falsely representing that they were entitled to this whole amount for feeding the sheep, and by falsely claiming the sum of $18,980.93 to cover freight charges. It must be conceded that the railway company had the right to grant the feeding in transit privilege mentioned in its published tariffs, providing the same is granted to all shippers. The question then suggests itself, What is this feeding in transit privilege for? Of course it is for the purpose of feeding the stock for market. This means improving their condition as to flesh. Is it not the custom of railway companies to care for and feed the stock of all shippers desiring it at these feeding points. The tariffs themselves do not make a contract to do so unlawful or discriminatory, so far as the pleadings show. What the evidence at the trial may show is another matter. It appears from the answer of the railway company: That the railway company's tariff No. 18400 provides for feeding in transit of live stock at regular feeding stations, which are Eldon, Muscatine, Valley Junction, Iowa; Silvis and Stockdale, Illinois—the capacity thereof being as shown in the answer above quoted. That in the railway company's tariff No. 21500 the schedule of prices to be charged by the railway company at the Stockdale Yards are classified according to the time the stock is held. Plaintiffs in error did not pretend to state in their complaint the exact charge for hay, corn, and screenings; hence on the pleadings proof of discrimination does not necessarily appear as to this matter.

[7] It appears, therefore, that the railway company permits a feeding in transit privilege at Stockdale, Ill., and when the stock are held for more than 15 days certain prices are charged. When held less than 15 days a different price is charged; the price seeming to be less as the time of holding increases. The tariff provides that the stock may be held more than 15 days; how much more does not appear. Certainly there is no limitation upon the time, and if the feeding in transit privilege is valid for one day, there is no reason why it may not be valid for six months if allowed to all shippers.

We are satisfied that the judgment entered below against the plaintiffs in error was erroneous, and therefore are of the opinion that it should be reversed, and the case remanded for a new trial; and it is so ordered.