## ZUMSTEG v. ÆTNA CASUALTY & SURETY CO.

Circuit Court of Appeals, Eighth Circuit.
February 20, 1929.

No. 8239.

Harry S. Silverstein, of Denver, Colo. (G. Dexter Blount and David Rosner, both of Denver, Colo., on the brief), for appellant.

John P. Akolt, of Denver, Colo. (Milton Smith, E. L. Brock, Milton Smith, Jr., and E. R. Campbell, all of Denver, Colo., on the brief), for appellee.

66

Before KENYON, Circuit Judge, and JOHNSON and McDERMOTT, District Judges.

KENYON, Circuit Judge. Appellant brought action against appellee in the District Court of the United States for the District of Colorado, claiming damages for various items hereinafter discussed. The trial court entered judgment on the pleadings in favor of appellee, and dismissed the complaint. The case, therefore, is to be determined on the pleadings.

█ This court has said in Walker et al. v. Traylor Engineering & Mfg. Co. (C. C. A.) 12 F.(2d) 382, 385, that these questions are determinable by the laws of the state "regulating the practice and pleadings in the courts of that state." Under the laws of Colorado, where this case originated and was tried, the courts hold that the motion for judgment on the pleadings is "allowed only when it affirmatively appears that the party against whom the motion is interposed is without right" (Childers v. Baird et al., 59 Colo. 382, 148 P. 854), and that motion for judgment on the pleadings cannot be entertained where a material issue of fact is tendered (Lamon v. Zamp, 81 Colo. 90, 253 P. 1056; Williams v. Rocky Mountain Fuel Co., 55 Colo. 133, 133 P. 742; Richards et al. v. Stewart, 53 Colo. 205, 124 P. 740). These holdings present substantially the same test laid down by this court, viz., that the judgment rendered on the pleadings to be valid "must be sustained by undisputed facts appearing in the pleadings." Klink v. Chicago, R. I. & P. Ry. Co. (C. C. A.) 219 F. 457, 461.

Does it affirmatively appear from the pleadings that appellant had no right to recover; that a situation is presented where there is no material question of fact to litigate? The answer to this requires careful examination of the pleadings.

The complaint is a very extended one, and the alleged facts stated therein and gathered from the exhibits attached thereto are substantially as follows:

On July 20, 1923, Knowlton & Terry, contractors, made a contract with the government of the United States for the construction of a road known as the Cameron Pass project in Colorado. Bond, upon which appellee was surety, was executed by them for carrying out the contract. They performed some 24 per cent. of this work between August 1, 1923, and December 1, 1923. Weather conditions made it impossible to proceed further at that time. In the spring of 1924 they had failed to pay approximately $8,000 of construction bills, and appellee was notified by the United States to take over the project and complete it. In pursuance of this, Knowlton & Terry in April, 1924, assigned their contract to appellee; it assuming their obligations to the government.

April 26, 1924, appellee entered into a contract with one Johnson, which contract is made part of the complaint, and under the terms of which Johnson was to complete the contract made by Knowlton & Terry with the government, appellee to collect the moneys due from the United States on proper estimates and to promptly pay the same over to Johnson.

Shortly after this arrangement was made Johnson and appellant entered into an oral agreement, by which appellant agreed to advance moneys to Johnson to be used in the performance of the work, and to have an interest in the contract, to be determined by the amount advanced. Under this arrangement appellant advanced to Johnson $11,136.86. November 1, 1924, Johnson executed and delivered to appellant a written assignment of his interest under the April 26, 1924, contract. After April 26, 1924, Johnson prosecuted the work until about September 20, 1924, when work was discontinued on account of weather conditions. During that period the moneys paid by the government to appellee were turned over to Johnson. Work was resumed June 5, 1925, by Johnson, and continued until August 14, 1925.

December 20, 1924, appellant and Johnson notified appellee of the oral and written assignments made by Johnson to appellant of his interest under the contract.

December 20, 1924, appellee was served with garnishee summons in a case pending in the state district court in Colorado, in which the city of Glenwood Springs was plaintiff and Johnson was one of the defendants. Appellee answered this summons, denying any indebtedness to Johnson, and stating that it was advised that Johnson had assigned his interest in the April 26, 1924, contract to appellant. The city of Glenwood Springs traversed said garnishee answer. After the traverse was filed, appellant, as assignee of Johnson's contract, made advances for construction purposes aggregating some $8,236.68.

Another garnishment summons was served on appellee May 26, 1925, in the case of the Southern Surety Co. v. Johnson and other defendants, pending in the state district court at Denver. Appellee filed answer denying any indebtedness to Johnson,

admitting that it had a contract with him relating to the Cameron Pass project and certain property of his in its possession in the nature of collateral security delivered to it by Johnson, and asserted that it was advised that Johnson had assigned his interest, under the contract, to appellant to secure the indebtedness from him to appellant.

It is asserted that no traverse to the answer was filed within ten days, as provided by the statutes of the state of Colorado, and no attempt made to traverse said answer until July 30, 1925, and that the so-called affidavit in traverse then filed was void and ineffective; that appellee was advised during the months of May and June, 1925, that $1,000 advanced by appellant on May 9, 1925, and $675 advanced by him on May 16, 1925, were for the purpose of purchasing a Graham automobile and a Dodge automobile to be used in the construction work; that, at the time of the two garnishee summonses, appellee was not indebted to Johnson, and had no money or property of his in its possession; that on July 19, 1925, appellee received from the United States the sum of $5,871 as payment of 90 per cent. of an estimate made by the United States engineer covering construction work done on the property by appellant or Johnson subsequent to June 5, 1925, which money it is asserted appellee had agreed in the April, 1924, contract with Johnson to pay to him promptly as soon as received from the United States; that appellee willfully, knowingly, recklessly, deceitfully, etc., and secretly intending to accept the benefit of appellant's expenditures and to force appellant and Johnson to discontinue the construction work, failed and refused to pay over the $5,871 to appellant or Johnson, and hampered and harassed appellant and Johnson in the performance of the work; that during the month of July, 1925, and up to August 14, 1925, appellee, for the purpose of hampering the work and of forcing appellant and Johnson to abandon the work to appellee, circulated false, malicious, and misleading rumors among various creditors of appellant and Johnson to the effect that Johnson and appellant were incapable and inefficient and financially broke, and were about to abandon the work, and that all of this prevented appellant from prosecuting the work vigorously, and that appellee willfully, maliciously, etc., refused to permit appellant and Johnson to continue in the performance of the construction work; that on August 14, 1925, appellant was forced to enter into a contract providing that appellee should complete the construction work; that

in completing the construction work appellee was careless and negligent, and had an utter disregard of appellant's financial interest, as a result of which appellant was damaged in the sum of $3,956.37, which is the difference between the amount advanced by appellant and the sum which he was allowed in the accounting proceeding in the state court; that in completing the construction work appellee used certain property of appellant, consisting of the two automobiles, and other equipment and horses; that the automobiles were returned to appellant in a damaged condition; that the equipment was stored in a place unknown to appellant, and he was charged for storage on the same, and that appellee failed to return the horses when the work was completed, retaining them until August, 1926, and that appellant was compelled to pay $135 for keep during said period; that, if appellee had not refused to turn over to appellant or Johnson $5,871 received from the United States on or about July 19, 1925, appellant would have completed the work by September 1, 1925, and would have made a net profit of not less than $15,000; that, because of the failure to turn over this money, and in order to protect his rights under the April 26, 1924, contract, it was necessary for appellant to intervene in the suit of Southern Surety Co. v. Johnson, being the second suit in which appellee was served with garnishee summons; that he filed a cross-complaint therein against the parties of record, including appellee; that appellee answered, contesting the claims of appellant, as set forth in his cross-complaint. A trial was had and a decree rendered November 9, 1925, finding that intervener contributed to said construction work $11,136.68, and providing that this amount should be paid to him to the extent of the funds available before there be any distribution of profits; that garnishee should exert its best efforts to secure promptly from the government a final settlement for the work, and should render a correct accounting to intervener (appellant) of all moneys received from the government of the United States after July 1, 1925; that intervener, before payment of the $11,136.68, should furnish garnishee evidence of the release of garnishee from writ of garnishment in the three suits pending in the state courts of Colorado. The decree discharged the garnishee, but the court retained jurisdiction until a full accounting should be made by said garnishee. An accounting was filed, to which appellant filed objections and exceptions. The court found on the accounting hearing that appellant was entitled to

$7,180.31, and awarded judgment against garnishee, and upon payment of said sum, garnishee was to stand discharged from any further liability to intervener growing out of the decree of November 9, 1925. Appellant claims it was necessary to employ attorneys to represent him in this suit, and he is asking to recover fees paid said attorneys; that, as a result of appellee's acts, especially in failing to pay over the $5,871 collected from the government and interfering with the completion of the work, and maliciously circulating false rumors among creditors and employees, he was forced to surrender and abandon his rights under the April, 1924, contract, and to enforce his rights in intervention proceedings in the state court; that appellee acted maliciously, vexatiously, and in utter disregard of appellant's rights and feelings. Damage is asked as follows:

"(a) In the sum of $15,000.00 for loss of profits, as hereinbefore alleged.

"(b) In the sum of $3,956.37, loss through the completion of the construction work by defendant, as hereinbefore alleged.

"(c) In the sum of $600.00, damage to Graham automobile of plaintiff, as hereinbefore alleged.

"(d) In the sum of $490.00, damage to Dodge automobile of plaintiff, as hereinbefore alleged.

"(e) In the sum of $175.00, rent charged for storing said equipment, as hereinbefore alleged.

"(f) In the sum of $135.00, rent charged and paid for keeping and caring for said horses, as hereinbefore alleged.

"(h) In the sum of $2,750.00, reasonable attorneys' fees paid out by plaintiff in said intervention proceedings, as hereinbefore alleged."

Appellee's answer admits many of the paragraphs of the complaint, viz., that Knowlton & Terry discontinued work and assigned their contract to appellee; that appellee entered into a contract for the completion of the work with Johnson April 26, 1924; that Johnson proceeded with the work until stopped by inclement weather; sets up the garnishments in the state courts of Colorado, in one of which, the case of Kate Halferty, judgment against Johnson for approximately $5,000 had been obtained; admits the contract of August 14, 1925; admits, and relies on, the decree of the district court of Colorado in the suit of the Southern Surety Co. v. Johnson et al., in which appellant was intervener; alleges that it did not pay over the $5,871 to Johnson and appellant because of the garnishments; alleges that, because of the matters set forth in the answer, appellant is barred from recovery in this suit; further, that all matters were merged in the contract of August 14, 1925. The reply admits that the Southern Surety Company filed a purported traverse to the appellee's answer and garnishment, but alleges that the traverse was void; denies that the issues in the garnishment case were not determined until the decree of November 9, 1925, of the Denver district court; denies that appellee refused to recognize as valid the assignment from Johnson to appellant; denies that appellee refused to turn over the $5,871 on account of the garnishments. There are some allegations and denials in the complaint and reply that are refuted by the contract of August 14, 1925, and the decree and judgment of the state court.

This abbreviated summary of the pleadings is sufficient to show the nature of the case. It is apparent that appellant's complaint is based largely upon the failure of appellee to turn over to Johnson or appellant the $5,871 collected by appellee from the government. The contract of August 14, 1925, an undisputed matter, is of primary importance in this case, as are also the proceedings in the state court in the Southern Surety Company case and the decree and judgment there rendered as bearing on the question of res judicata insisted upon by appellee as to some of the items of damage claimed. The trial court was of the opinion that a number, if not all, the issues raised had been before the state court and there litigated.

We take up the various items of damage and discuss them in the light of such facts as must be considered fairly established by the pleadings. It is evident that the contract of August 14, 1925, while it does not state that all matters were adjusted and settled, was intended to be a new starting place for all parties. The past had been unfortunate for them, and Johnson and appellant were evidently unable to carry on the work to the satisfaction of the government. Appellee, as surety on the original bond, had a vital interest in the matter, and, under the terms of the contract, took over the work, was to complete it, and then to account to either Johnson or appellant. It did complete it. The item claimed of loss of profits of $15,000 is based on the refusal of appellee to pay to appellant or Johnson the $5,871, and the hampering and interfering with the construction work by appellant. The theory is that, if these things had not occurred, appellant would have completed the work at a profit to

him of $15,000. Appellee's answer alleges that the reason it did not pay over the $5,871 was on account of garnishee summons from the state court of Colorado. The first of these was in the suit of the City of Glenwood Springs v. Johnson et al. Appellee filed answer to this denying indebtedness, and within the period allowed by statute the city of Glenwood Springs filed a traverse to said garnishee answer, which was not disposed of until March, 1926, when garnishee was discharged. The second garnishment was May 26, 1925. Answer was filed to this June 15, 1925. No affidavit traversing the answer was filed within the ten days provided by the Colorado statute. The traverse affidavit was filed later. It is probable that judgment might have been entered discharging garnishee after the ten days, but it was not done. The $5,871 was received by appellee July 15, 1925, and appellee was not discharged as garnishee under the second garnishment until November 9, 1925. The third garnishment proceeding was in the Halferty Case, which was after the $5,871 was paid to appellee. Whether or not the traverse was filed to the garnishment answer in the second garnishment in time, the fact remains that appellee had not been discharged from garnishment at the time the $5,871 was paid to it. Hence it would seem that appellant had the right to retain the money until discharged from garnishment. In the contract of August 14, 1925, it was recognized by Johnson and appellant that this money was held by appellee because of the service of garnishee summons in the cases in the state courts. That contract was signed by Johnson, but in a written statement attached thereto appellant agreed to it. It stands as a fact in the case that appellee and appellant agreed in August, 1925, that appellee should take over the contract and complete it. We are not impressed with the claim, in view of all the pleadings that appellant was forced to enter into this contract of August 14, 1925. That is pleaded as a mere conclusion, and no facts are specified as to how he was forced to enter into this contract. Financial embarrassment as an incentive for entering into the contract would not amount to legal duress. The contract was certainly not void. Appellant is not attempting to rescind it. He intervened in the Southern Surety Company Case in the state court and made the contract the basis of his action. An accounting took place, and he received some $7,180.30 under and by virtue of the contract. Having therefore ratified the contract, he is not in a position to say that he has lost profits because of entering into the same. Appellee completed the work, and under a court decree has accounted to appellant, as provided in the contract. It would seem that the $15,000 claim for loss of profits must pass out of the picture.

■ As to the item of $3,956.37 claimed as damages because appellee carried on the work under the contract in a careless, negligent, and wanton manner, it is apparent that this question was determined in the Southern Surety Company Case in the state court. Appellant insists that this case is an entirely different one, this being a case sounding in tort. It makes little difference what this case may be designated or what it may sound in—if an issue present here was decided in the state case where both appellant and appellee were parties, it becomes settled as a matter between them; whether or not one case be in equity and one in tort—the inquiry should be—were the parties and issues the same?

In the decree in that case, November 9, 1925, the court provided that, after the Ætna should receive its final settlement in payment from the United States, it should "render and file in this cause a true and correct accounting to the intervener (Zumsteg) of all moneys received by it from the government of the United States of America after the 1st day of July, 1925, as payments on account of said construction work, and, after deducting the reasonable and necessary expenses incurred by the garnishee in the taking over and completion of said construction work, based upon the contract dated the 14th day of August, 1925, * * * shall pay to the intervener the amount of $11,138.68, together with interest thereon at the rate of 8% per annum from November 9, 1925, to the date of payment, provided that the net amount of money received by the garnishee (Ætna) as shown by said accounting, is sufficient for that purpose. * * * *"

After the completion of the work and final settlement with the government, an accounting was filed, as provided by the decree. To this appellant filed objections and exceptions, and raised the very question now raised that the work had been extravagantly, negligently, and recklessly done, and that the waste amounted to at least $3,268.12. The state court had a hearing upon these exceptions and entered further findings and judgment, which appear in the answer in this case, and are not controverted. It sustained certain of the objections and exceptions, overruled the balance, and found there was due from appellee to appellant the sum of $7,180.31, for which judgment was entered,

and it was paid. It would seem clear, therefore, that the very question involved in the claimed damages of $3,956.37 had been tried out and decided in the state court action, and that that question is now res judicata. Smith v. Cowell, 41 Colo. 178, 92 P. 20; Ornauer v. Penn. Mutual Life Ins. Co., 52 Colo. 632, 123 P. 650; Albertson v. Clark, 70 Colo. 129, 197 P. 757; Pomponio v. Larsen, 80 Colo. 318, 251 P. 534.

■ As to the items, $600 damage to Graham automobile, $490 damage to Dodge automobile, $175 rent for storage of equipment, and $135 rent item for keep and care of horses, it appears that appellant advanced certain moneys used for the purchase of the Graham and Dodge automobiles, and these automobiles were used, together with certain horses and equipment, in completing the construction work. Appellant now claims that the horses and equipment were not returned as they should have been; that the automobiles were returned in a damaged condition; that he was compelled to pay rent for the storage of equipment, and charge for the keeping of the horses. It is not questioned that appellee had the right to use these horses, equipment, and automobiles. The decree in the state court of November 9, 1925, provides that Zumsteg (appellant here) should be entitled to the possession of this property as soon as the project was accepted by the government. The court later, in passing on the accounting in that case, found, "That the Garnishee has duly and properly accounted to the intervener for all personal property which the said Garnishee was obligated 'to account for under the decree of this Court entered herein on November 9, 1925." It is insisted here that these items were not covered in the accounting in the state suit. The garnishee there (appellee here) could not have duly and properly accounted for the personal property, if it was returned incumbered with bills for storage and charges for keep of the horses, or if the automobiles had been damaged, as now claimed. Further, it is to be noted that the equipment was turned back in August, 1926, while the final judgment was not rendered until November 3, 1926. If these matters were not actually in controversy in that action, they could have been, the parties to this suit being parties to the state suit, and the questions now raised litigated and determined therein as "incident to, or necessarily connected with, the subject-matter of the litigation." Smith v. Cowell, 41 Colo. 178, 92 P. 20; Pomponio v. Larsen, 80 Colo. 318, 251 P. 534. It would seem, therefore, that the questions concerning these four items are res judicata.

■ The claim of $2,750, attorneys' fees, is based on the alleged fact that, in order to protect his rights, appellant was forced to interplead in the state suit of the Southern Surety Co. v. Johnson et al., in the state district court of Colorado. Again the contract of August 14, 1925, appears, which was entered into two days after appellant voluntarily intervened in the Southern Surety Company Case. It was there recited that, when the moneys were paid over by the government to appellee in final settlement, it should "hold all funds which may be paid it by the United States government * * * subject to the determination by a Court or Courts of competent jurisdiction, of the rights in and to said fund of Fred H. Zumsteg, City of Glenwood Springs, Colorado; the Ætna Casualty & Surety Company, Southern Surety Company, Kate Halferty, and of any other claimant or claimants in and to said fund who may attempt to assert rights thereto, by Court proceedings."

The general rule as to recovery of attorneys' fees as an expense of litigation is stated in 17 C. J. § 133, as follows: "Apart from the sums allowable and taxed as costs, there can, as a general rule, be no recovery as damages of the costs and expenses of litigation, or expenditures for counsel fees. In cases of civil injury or breach of contract, in which there is no fraud, willful negligence, or malice, the courts have considered that an award of the costs in the action is sufficient to cover the expenses of litigation and make no allowance for time, indirect loss, and annoyance."

That a situation may arise in which one litigant would be entitled to recover against another his attorneys' fees is undoubtedly true, but the general rule is that the opponent of a litigant cannot be called on for reimbursement for money paid out for attorneys' fees and expenses of litigation. While attorneys' fees are sometimes provided by statute or by the contract itself, there is no such statute or contract here involved. Such fees are sometimes allowed where exemplary damages are recovered. We fail to see how this case can be brought under any exception to the general rule. It is apparent from the contract of August 14, 1925, that the fund which should be in the hands of appellee from the government after the work was completed was to be the subject of determination by the court as to the various rights of claimants thereto. The mere fact that the appellee was prompted by wrong motives in withholding the payment over of money received from the government, if in fact it was holding it by virtue of the garnishment proceed-

ing, certainly is not sufficient as a basis for allowing attorneys' fees against appellee for services in the intervention. We see no reason why the claim for attorneys' fees could not have been determined in the suit in the state court.

The last item for consideration is the claim of $10,000 for exemplary damages. Paragraph 27 of the complaint alleges:

"That in failing to pay to plaintiff or to said Johnson, as the agent or representative of plaintiff, the money received by defendant from the United States of America on or about the 19th day of July, 1925, and in interfering with the completion of said construction work by plaintiff, and in circulating false rumors with reference to plaintiff and said Johnson among said creditors and employees, and in forcing plaintiff to surrender and abandon said contract and construction work to defendant for completion, and in forcing plaintiff to enforce his rights through said intervention proceedings, all as hereinbefore set forth, defendant acted maliciously, vexatiously, wantonly, and with an utter disregard of plaintiff's rights and feelings."

It is to be noted that some of the allegations in the complaint bearing on exemplary damages were stricken by the court, and no objection or exception taken thereto. Other statements appear throughout the complaint charging appellee with having maliciously, wantonly, and recklessly committed torts resulting in damages to appellant. All the allegations as to the actions of appellee entitling appellant to exemplary damages relate to matters happening before the execution of the August 14, 1925, contract, to wit, such as malice in refusing to pay over the $5,871 and malice in circulating false rumors among creditors and employees as to appellant's and Johnson's financial condition. We do not understand that any claim is made for damages because of the false rumors, or as a result of the quitting of employment by certain employees, but the claim is made that these rumors assisted in forcing plaintiff to enter into the August 14th contract, which was a breeder of appellant's troubles and damages. The whole record shows that there was no legal duress in entering into this contract, or that the alleged rumors had any proximate connection with the matter. In his reply brief appellant says: "Zumsteg has never claimed that the contract was made under legal duress and has never attempted to avoid it. He does claim and he alleged that, through the interference of the Ætna Company, resulting in his embarrassment, finan-

cially and otherwise, and through the insistence of the Ætna Company, he was forced to enter into the contract. It was the failure of the Ætna Company to perform its duties under the contract and to make him a proper accounting that caused him to complain." The failure of appellee to perform its duties under the contract and to make proper accounting is exactly what was litigated in the state court. The contract has been recognized by appellant, and he has accepted benefits therefrom. While the contract does not specifically so state, we think the fair inference is that these various matters occurring prior to the contract of August 14th were intended to be waived by the parties to that contract and a new start taken. Further, as there are no actual damages, there could be no recovery for exemplary damages. This case is apparently an afterthought to the case in the state court, where appellant intervened and received a substantial judgment.

As to the matters which we have pointed out as res judicata, it is an attempt to impeach the judgment of that court on the accounting. That suit, which went far beyond an ordinary accounting suit, covered questions as to loss of profits; as to waste and mismanagement; and the return and condition of the personal property.

As to the claims here that could not have been litigated in that suit, the record shows they are claims that could not be enforced.

We think it affirmatively appears from the pleadings that there is no material question of fact to litigate in this case, and that appellant cannot recover. The court was warranted in sustaining the motion for judgment on the pleadings.

Affirmed.