## JAMES B. BERRY'S SONS CO. OF ILLINOIS v. MONARK GASOLINE & OIL CO., Inc.

Circuit Court of Appeals, Eighth Circuit. March 21, 1929.

No. 8250.

A. L. Quant, of Kansas City, Mo. (John F. Cell, W. S. McClintock, and F. K. Ferguson, all of Kansas City, Mo., on the brief), for appellant.

M. L. Friedman, of Kansas City, Mo. (Ben R. Estill, I. J. Ringolsky, W. G. Boatright, and Harry L. Jacobs, all of Kansas City, Mo., on the brief), for appellee.

Before KENYON, Circuit Judge, and JOHNSON and McDERMOTT, District Judges.

McDERMOTT, District Judge. ▮ In a suit upon a written contract for the sale of 75 tank cars of gasoline, the trial court directed a verdict for the defendant (the buyer) at the close of the opening statements for both sides, receiving, as a part of such statements, the contract sued on. Under such circumstances, our inquiry is directed to the question of whether the petition stated a cause of action, and whether any statement of counsel affirmatively precludes recovery, all inferences being drawn in support of the petition and plaintiff's statement. Klink v. C. R. I. & P. Ry. Co., 219 F. 457, 461 (8 C. C. A.); Zumsteg v. Ætna Casualty & Surety Co., 31 F.(2d) 65, decided by this court on February 20, 1929.

The petition sets up a written contract, dated June 21, 1923, signed by the defendant to buy 75 cars of gasoline at 10½ cents per gallon, f. o. b. group 3. The contract is an ordinary sales memorandum, calling for shipment at the rate of two cars per day beginning July 10, 1923, with 1 per cent. off for payment within 10 days. It contains this clause:

"In the event that payment for goods shipped is not promptly made in accordance with the terms of this sale; or in the event that the credit or the financial responsibility of the purchaser becomes impaired or unsatisfactory to the seller, the seller reserves the right to demand cash or satisfactory security before making shipments. Upon the failure of the buyer to provide cash or satisfactory security to fully satisfy the seller's demands, the seller reserves the right to discontinue making shipments and to cancel the sale, or any part of the sale, thereby terminating all obligation on the part of the seller for delivery of the goods, or any part of the goods sold. If terms of sale include discount allowance, it is expressly agreed that discount is not to be deducted from items representing freight charges or freight equalization."

The petition alleges that prior to July 10th (the first delivery date) the defendant notified the plaintiff it was not able to pay for the gasoline and would decline to accept it if shipped; that plaintiff was otherwise advised that the defendant's financial responsibility was impaired, bad, and unsatisfactory; that thereupon, and at the times specified in the contract, the plaintiff tendered indorsed shipper's order bills of lading to defendant and demanded payment in cash; which was refused. The action is for $9,922.40, the difference between the contract and resale price on the open market, plus the expenses of the resale.

The answer sets up that, by virtue of the quoted provision, the contract is unilateral and void; that the plaintiff's asserted dissatisfaction with the defendant's financial responsibility was arbitrary; that the plaintiff had no right to demand that the defendant discount the invoices; and that such demand was a breach of the contract. The defendant alleges that plaintiff notified it on July 7 of its intention to demand cash, which it alleges was a breach of the contract; and that it had no notice of the resale.

The opening statement of plaintiff amplified this story somewhat; it was stated that early in July the defendant undertook to beg off because of its inability to pay for the gasoline, and that plaintiff said that if it could get out of its contract with the refiner, it would let the defendant off; that the refiner would not let plaintiff off, and therefore plaintiff must hold the defendant or stand the loss itself; that later the defendant wrote flatly declining to take any gasoline; that still later, the defendant, insisting on its right to have the gasoline shipped on open credit, wrote the plaintiff to "Send on your gas." The defendant, in its opening statement, claimed there was no liability because the defendant was in fact financially responsible, because the gasoline was shipped on a shipper's order instead of a straight bill of lading ("to ship the merchandise direct to us"), and because the plaintiff declined to extend credit.

The court directed a verdict because, in its opinion, the contract was "a unilateral contract and was nonenforceable," and because the "demand for security or cash should have been made before shipment and not after shipment."

▮ In this there was error. The contract was not unilateral. The plaintiff agreed to sell a definite quantity at a fixed price, and the defendant agreed to buy. It was therefore a bilateral contract, a promise for a promise. It is not true that mutuality of obligation is an essential to a contract, in the sense argued by defendant, that for each stipulation in a contract binding the one party there must be a corresponding stipulation binding the other. The true rule is one of consideration; if the only consideration for a contract is a promise, then that promise must be enforceable, and not option-

al. Judge Booth, speaking for this court, has very recently gathered an impressive array of authorities upon this proposition, and they need not be here repeated. Imperial Refining Co. v. Kanotex Refining Co., 29 F. (2d) 193. Judge Van Valkenburgh, likewise speaking for this court, laid the rule down plainly:

"The defense of want of consideration must be ruled against appellees. The sum of $10, the receipt whereof was duly acknowledged, though nominal, was sufficient to support the contract and every stipulation favorable to the buyer, including the option to withdraw in its discretion."

"Nor can the contract be held void because of want of mutuality of obligation. The rule is thus stated: 'When there is an agreement founded on a consideration, it is not invalid for want of mutuality because one party has an option, while the other has not, or, in other words, because it is obligatory on one and optional with the other.' "

"The foregoing rule applies where there is a valuable consideration paid by one party to another for the privilege of doing a certain thing. It is otherwise when the sole consideration is a promise for a promise, and the things to be done or the goods to be furnished are uncertain, indefinite, and optional with the party seeking to enforce the contract." Electric Management & Eng. Corp. v. United P. & L. Co., 19 F.(2d) 311 (8 C. C. A.).

And in Peck v. Stafford Flour Mills Co., 289 F. 43 (8 C .C. A.) this court was confronted with a contract that gave the seller the right to cancel if the buyer had any past-due bill unpaid, or was in process of liquidation. The argument was made that the contract was void for want of mutuality. This court held otherwise and said:

"The argument is ingenious, but not persuasive. We pass by without comment, but without assent, the assumption that the phrase 'any past-due bill' includes those due on other contracts than the one in hand. But an option of one party to cancel, which will render the contract invalid for lack of mutuality, must be an option dependent upon the will of that party only, and not dependent upon action or inaction by the other party. In the case at bar, however, the option of plaintiff to cancel was dependent upon the failure of defendant to keep up his payments. It would be a startling conclusion that defendant, under the clause above quoted, by breaching a former contract, could thereby render the present contract

unilateral as to plaintiff, and therefore not binding on the defendant. The maxim a party may not take advantage of his own wrong prevents such a conclusion."

Turn now to the case at bar. The plaintiff bound itself to furnish this gasoline, reserving only the right *to demand cash or security* if the credit of the buyer became impaired or unsatisfactory; and the plaintiff concedes its dissatisfaction must be actual, and based upon reason, and not arbitrary and capricious. But even when such dissatisfaction or impairment existed, the plaintiff had no right to cancel; its only right was to demand cash or satisfactory security. If the buyer furnishes cash or satisfactory security, the plaintiff must furnish the gasoline. Now the plaintiff has a right to cancel; but when does its right to cancel come into existence? Only "upon the failure of the buyer to provide cash or satisfactory security." But this is "action or inaction" of the buyer, and not the seller, and this court has properly held that a contract is not void if the buyer by his "action or inaction" can compel the seller to perform.

We need not speculate about the binding effect of this contract upon the plaintiff. The defendant, by tendering cash or good security, could always make the plaintiff deliver or stand the loss. If gasoline had gone up instead of down, counsel for the defendant would have found no difficulty in holding the plaintiff to its bargain; they would have tendered the cash, and reaped the profit from the contract. They cannot escape when the market breaks the other way.

As a matter of fact, if the clause in controversy had not been in this contract, the plaintiff would have had the right to demand cash or security and to refuse to deliver the goods on credit, even if the contract provided for credit, if the plaintiff had "become aware * * * that buyer was unable to pay debts as they became due in the ordinary course of business." And such implied term in the contract is more than a shield—it is a sword —and the seller can refuse to deliver except for cash, and sue the buyer for damages for refusal to accept deliveries and pay cash. In H. Muehlstein & Co. v. Hickman, 26 F. (2d) 40 (8 C. C. A.) the special master held that a seller, who had become aware of the unsettled financial condition of the buyer, could demand cash on delivery, or additional security, failing which, the seller need not deliver. He further held, however, that the seller could not then sue for damages. The facts bring the case close to the case at bar.

This court reversed the lower court, which sustained the master, and held the seller could recover his damages. The court said:

"The conclusion of the master, as sustained by the court, that the right of a vendor, upon becoming aware of the insolvency of the vendee, to demand payment on delivery, and to refuse to deliver goods upon the credit terms of a contract, is merely a shield of defense to the vendor was erroneous."

This disposes of the principal defense. The trial court held that the demand should have been made before instead of after shipment. The answer admits that on July 7, 1923, plaintiff "advised the defendant that it must discount the invoices covering shipments of gasoline made to it under the said contract." So demand was made before shipment. Moreover, it is alleged that the defendant repudiated before shipment, which, if true, excuses any tender. Colo. Yule Marble Co. v. Collins, 230 F. 78 (8 C. C. A.); Moore v. Security Trust & Life Ins. Co., 168 F. 496 (8 C. C. A.); Lamborn v. Log Cabin Products Co., 291 F. 435 (D. C. Minn.). The rights and obligations of the parties, after an anticipatory breach, need not be here explored, save to say that a manifestly useless tender is not necessary.

That the tender was made by the customary means of an indorsed, negotiable, shipper's order bill of lading, instead of by a straight bill of lading, need occupy little time. To hold that a defendant may escape a just and honest obligation for $10,000, because one form of bill of lading is used instead of another, is but to jest with a serious subject. If it is meant by this argument that the defendant had an absolute right to credit, it is only necessary to call defendant's attention to the contract it signed, by which the plaintiff had a right to demand cash or security if defendant's credit became impaired or unsatisfactory to the plaintiff.

It is faintly suggested that the plaintiff's sole right, in the event of a failure of the buyer to furnish cash or security, was to cancel. The law is otherwise. With reference to a much stronger clause, to wit, that if a future payment was not made, the down payment "is to be forfeited and the Contract of sale and conveyance to be null and void, and of no effect in law," the Supreme Court held that the seller might sue for the purchase price or his damage. The court said:

"The condition plainly is for the benefit of the vendor and hardly less plainly for his benefit alone, except so far as it may have fixed a time when Stewart might have called for performance-if he had chosen to do so, which he did not. This being so, the word void means voidable at the vendor's election and the condition may be insisted upon or waived at his choice." Stewart v. Griffith, 217 U. S. 323, 30 S. Ct. 528, 54 L. Ed. 782, 19 Ann. Cas. 639.

The opening statement of plaintiff does not make clear the willingness of the plaintiff to have given the 1 per cent. discount if defendant had complied with its demand for cash; however, the answer alleges that the plaintiff demanded that the defendant "discount the invoices"; of course, where cash is demanded on delivery, the defendant is entitled to the 1 per cent. discount for cash, as provided by the contract, if he complies with the demand. Neither is the statement clear as to the willingness of plaintiff to accept satisfactory security, if offered. In view of the fact that the real dispute was over the question of whether the defendant was bound at all except to take the gasoline on an open credit, and that no suggestion is made of the defendant's ability or willingness to pay the cash less the discount or to give any security, the points are not material, save as they serve to illustrate the advantage of determining cases on the evidence rather than on hastily made and informal opening statements.

The defendant agreed to buy gasoline, and the plaintiff to sell it. The contract is valid, and cast the loss of a rising market on the plaintiff; the defendant should stand the loss of a falling market, unless the claim of dissatisfaction with defendant's financial standing is false or arbitrary.

The cause is reversed and remanded for a new trial.